**UNITED STATES of America,**

v.

**Bess MYERSON, Carl A. Capasso, a/k/a "Andy Capasso," and Hortense Gabel, Defendants.**

No. 87 Cr. 796 (JFK).

United States District Court, S.D. New York.

April 13, 1988.

Peter L. Zimroth, Corp. Counsel, New York City, for movant; Lawrence A. Levy, Michele S. Blatt, David C. Bloomfield, of counsel.

Shea & Gould, New York City, for defendant Hortense Gabel; Michael S. Feldberg, of counsel.

## OPINION AND ORDER

KEENAN, District Judge:

### Background

This is a motion to quash a subpoena *duces tecum* served on the New York City Department of Investigation pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. The defendant Hortense Gabel is charged with the other named defendants in five counts of a six count indictment with Conspiracy (18 U.S.C. § 371), Mail Fraud (18 U.S.C. §§ 1341, 1342) and violating 18 U.S.C. §§ 1952 and 2. The indictment was filed October 7, 1987.

The defendant Gabel, at the times charged in the indictment, was a New York State Supreme Court Justice. The defendant Carl Capasso ("Capasso") and his former wife, Nancy, were involved in a divorce action, *Capasso v. Capasso*, over

which Gabel was presiding. Defendant Bess Myerson ("Myerson") was Commissioner of the Department of Cultural Affairs ("DCA") for the City of New York. The indictment charges that Capasso and Myerson were "steady and intimate" companions during the period in question. The indictment alleges that "Myerson, in her capacity as Commissioner of DCA, hired and employed Sukhreet Gabel in the official position of Special Assistant to the Commissioner of DCA." Sukhreet Gabel is the daughter of defendant Gabel. Allegedly, the conspiracy charged in the indictment had two principal purposes:

1. Influencing defendant Gabel's "judicial decisions" in *"Capasso v. Capasso* for the financial benefit of defendants" Capasso and Myerson; and

2. Obtaining and providing "employment for Sukhreet Gabel ... as Special Assistant to the Commissioner of DCA."

An investigation of the three defendants was being conducted by a Federal Grand Jury in this District and in December, 1986 defendant Myerson was called to testify before that Grand Jury and invoked her rights under the Fifth Amendment to the United States Constitution.

On January 22, 1987 the Mayor of the City of New York, Edward I. Koch, ("Mayor") appointed Harold R. Tyler, Jr., Esq. as "Special Counsel to investigate the circumstances and substantive issues in the context of which ... Myerson availed herself of her Fifth Amendment privilege before a Federal grand jury, and which might in any way involve the discharge of Commissioner Myerson's official duties and any other matters reasonably related thereto." On the same day, the Mayor directed all City Agencies and Departments "to cooperate fully with Special Counsel, and to make available ... the facilities, services, personnel and other assistance" necessary to conduct the investigation.

On January 28, 1987 Kenneth Conboy,[1] then Commissioner of the Department of Investigation ("DOI") of the City of New York, designated Special Counsel Tyler and

---

1. Kenneth Conboy is now a United States District Judge in this District.

Tyler Commission staff as DOI agents "for the purpose of conducting the investigation directed by the Mayor on January 22, 1987 into matters which relate or may relate to the office, standards, duties and actions of Bess Myerson as Cultural Affairs Commissioner of New York City."

At that time, Special Counsel Tyler was advised by former "Commissioner Conboy that DOI had been involved with the United States Attorney's Office ... in a joint investigation of the defendants named in the instant indictment." (Tyler Affidavit of February 17, 1988, at ¶ 5). On the recommendation of the former Commissioner of DOI, the Tyler Commission staff met shortly thereafter with the Assistant United States Attorney in charge of the federal investigation and the senior staff member of DOI who had been cross-designated as a Special Assistant United States Attorney.

In paragraph 6 of his affidavit, the Special Counsel points out that "the focus of my investigation was whether Ms. Myerson should continue in office" and that he also knew that he was required under § 803(c) of Chapter 34 of the New York City Charter to forward a copy of his Report "to appropriate prosecutorial authorities if it involved allegations of criminal conduct."

From late January until early April, 1987, the Tyler Commission conducted its investigation which included reviewing over 20,000 pages of documents and interviewing 35 witnesses. (Tyler Affidavit of February 17, 1988, at ¶¶ 7, 8 and 10). Three of the witnesses, defendant Gabel, her husband, Milton, and daughter, Sukhreet, were questioned under oath—the remaining witnesses were not examined under oath.

The Special Counsel made his Report to the Mayor on April 8, 1987. Somehow the Report was leaked to the press and parts of it appeared in the *Village Voice* on June 16, 1987. Shortly thereafter, the Report was made public.

Counsel for defendant Gabel, upon determining that DOI had custody of Special Counsel's file on January 11, 1988 sought an Order authorizing service of a subpoena under Federal Rule of Criminal Procedure 17(c). Judge Kevin T. Duffy, to whom this case was then assigned, signed such an order on January 12, 1988 and the subpoena, which is the subject of this motion to quash, was issued. The subpoena reads as follows:

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s): *

Any and all documents, notes, papers, transcripts, pictures having anything to do with the investigation and report by Harold R. Tyler, Jr., Special Counsel, concerning his investigation of Bess Myerson, Commissioner of Cultural Affairs, including but not limited to:

1. all transcripts of testimony;
2. all statements of witnesses;
3. all notes or memoranda of interviews with witnesses;
4. all documents produced to Special Counsel Tyler or his staff; and
5. all documents reviewed by Special Counsel Tyler or his staff. (footnote omitted).

*Discussion*

DOI maintains that the Tyler Commission files ("files") must be treated as those of a cooperating law enforcement body and are subject only to the discovery rules of Rule 16 of the Federal Rules of Criminal Procedure. Thus, so goes the DOI argument, joined in by the Government, defendant Gabel cannot subpoena the files under Rule 17(c) since that Rule only applies to material which is evidentiary in nature and not in the Government's custody or control. DOI urges the court to "prevent defendant from making an improper end-run around" Rule 16. Further, DOI argues that defendant has not met her burden of establishing that the files sought are evidentiary and relevant; that the documents cannot be obtained otherwise by due diligence; that she cannot adequately prepare for trial without the documents; that the documents if not obtained now will cause an unreasonable delay of the trial and that there is no showing that the subpoena is in good faith and not a "fishing expedition."

*United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1984). Finally, DOI contends that under federal common law and the Federal Rules of Evidence, the withheld materials are protected by the law enforcement investigation privilege and the attorney work-product privilege.

### I. Applicability of Federal Rule of Criminal Procedure 16

■ Rule 16 covers material which the prosecution must by law make available to a defendant in a federal criminal case. It does not apply to subpoenas to third parties which are governed by Rule 17(c).

The Court concludes that the Special Counsel is a third party and in no sense was a part of the prosecution or investigative team in this case. The Tyler Commission knew of the investigation and of the investigative team which was comprised of the United States Attorney and DOI. Although the Special Counsel chose to cooperate with the prosecutor and decided to give the prosecution access to his files, this does not turn the Special Counsel into a part of the prosecution effort, thereby protecting his files from the reach of a subpoena issued under Rule 17(c). The key factors here are the January 22, 1987 letter of the Mayor appointing the Special Counsel and the DOI Designation of the Tyler Commission of January 28, 1987.

The January 22, 1987 letter in unambiguous terms appoints the Special Counsel to investigate whether Myerson's availing herself of her Fifth Amendment privilege before the Grand Jury "in any way involve[d] the discharge of [her] official duties and any other matters reasonably related thereto." The letter did not in any way direct Special Counsel to join in the Investigation already being conducted by DOI in conjunction with the United States Attorney of the three defendants in this case.

Likewise, the January 28, 1987 Designation is concerned with the Tyler Commission's "conducting the investigation directed by the Mayor on January 22, 1987 into matters which relate or may relate to the office, standards, duties and actions of Bess Myerson as Cultural Affairs Commissioner of New York City." Indeed, paragraph 3 of the Designation directs that nothing "obtained from ... Myerson under legal compulsion ... be disclosed to any official or employee in the Department of Investigation since the Department is formally participating in an official, criminal inquiry into related matters being conducted by the United States Attorney for the Southern District of New York." Nothing in the Designation makes the Special Counsel a participant in the "criminal inquiry" referred to in paragraph 3 thereof.

Moreover, paragraph 4 of Special Counsel's Reply Affidavit of March 7, 1988 confirms that the Tyler Commission was not viewed as part of the prosecution effort. In that document, Special Counsel Tyler states that "While I was able for purposes of this particular investigation to stand in the place of the Commissioner of Investigation, my staff and I were not privy to grand jury testimony, unlike Commissioner Conboy and his staff." The words "this particular investigation" refer to Special Counsel's inquiry into the circumstances of then Commissioner Myerson's invocation of her Fifth Amendment privilege and how that might involve the discharge of her official duties as Commissioner. DOI was privy to grand jury testimony while Special Counsel was not. Special Counsel was conducting a different investigation for a different purpose. Rule 16 is of no avail to DOI in this motion nor is the decision in *United States v. Friedman,* SSS 86 Cr. 259 (WK), so heavily relied on by the movant. The facts in *Friedman* are different than the facts here.

■ Nor does 18 U.S.C. § 3500 govern statements of witnesses made to third parties. *United States v. Paternina–Vergara,* 749 F.2d 993, 997 (2d Cir.1984), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985), and *United States v. Bermudez,* 526 F.2d 89, 100 n. 9 (2d Cir. 1975), *cert. denied,* 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976), stand for the proposition that the Jencks Act does not apply to documents which are not generated in a joint federal-state investigation.

## II. The Burdens Imposed by Federal Rule of Criminal Procedure 17(c) and the Issue of Privilege

■ To withstand a motion to quash a Rule 17(c) subpoena, the party serving the subpoena must show: (1) the documents sought are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend to unreasonably delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." *United States v. Nixon*, 418 U.S. 683, 700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974) (citing *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y.1952)). The defendant Gabel urges that subpoenas served on third parties are subject to a diminished standard as compared to those served on a law enforcement agency. The Court finds no authority to support that proposition.

■ In connection with this motion, DOI has submitted to the Court and defendant Gabel an Abbreviated Index of Tyler Commission documents it seeks to withhold. A more Detailed Index of documents it objects to producing has been submitted to the Court *in camera*. To this *in camera* submission Gabel objects. The Court overrules the objection. There is nothing in the law that precludes the Court from conducting an *in camera* review. *Donovan v. FBI*, 806 F.2d 55 (2d Cir.1986); *Von Bulow v. Von Bulow*, 811 F.2d 136 (2d Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987). Moreover, the Abbreviated Index supplies Gabel's counsel with a good idea of what the various documents are.

■ By far, the largest number of the documents simply are newspaper articles which can easily be obtained from newspaper morgues by the defendant if she seeks them. This is so, particularly here, where

DOI has supplied to defense counsel in the Abbreviated Index the date of each article. The Court has carefully studied the Detailed Index and Abbreviated Index to learn whether the materials described are subject to subpoena under the test in *Nixon*, as well as whether a law enforcement investigation privilege or attorney work-product privilege applies to them. In some instances, one or more prongs of the *Nixon* test preclude making the documents available and in some instances a part, or parts of the *Nixon* test, together with the law enforcement privilege [2] or the attorney work-product privilege applies.

In ruling that documents "are evidentiary and relevant" the Court is taking a liberal view of these terms. In the Court's view, the complexity of this trial together with its expected length (the Government conservatively estimates two months) mandate that the defense have discovery in advance of trial to obviate delay during the course of the trial. Many of the documents being supplied apparently are of some length. If they are not turned over now, the Court anticipates adjournment requests by the defense during trial which in the words of *Nixon* would "tend to unreasonably delay the trial."

The accounts of witness interviews and sworn statements of Milton Gabel and Sukhreet Gabel may well be "evidentiary" and certainly are "relevant." The sworn testimony of Milton Gabel and Sukhreet Gabel is to be supplied to the defendant Gabel.

The other documents which the Court directs be made available to defendant Gabel pursuant to the subpoena are listed separately in Appendix "A" to this decision by the Bates numbers supplied by DOI.

The Court still has *sub judice* the motion to dismiss the indictment filed by the three defendants. Assuming any portion of the indictment remains, the Court will hold a final pretrial conference of this matter on September 7, 1988 at 11 a.m. in Courtroom 444. Since the Second Circuit Judicial Conference will be held from September 8,

---

2. The reference to the law enforcement privilege in the main text does not refer to Tyler Commission generated documents, but to DOI documents which are separate from and independent of the Special Counsel's work.

1988 until September 11, 1988, the trial of this case is now set for September 14, 1988 at 10 a.m. (September 12 and 13, 1988 are Rosh Hashanah, Jewish New Year). This trial date is a firm one.

SO ORDERED.

## APPENDIX A

C 1211, 1212, 1213–14, 1215–24, 1227, 1229–30, 1232, 1303–04, 1315, 1328, 1414–15, 1417, 1418–19, 1437–38, 1466, 1467.

D 218–19, 220.

E 202, 203, 205, 206, 207, 209–12, 390–96, 398–403.

G 490–500, 552, 553, 554.

I 1–15, 91–194, 195–334, 335–543, 544–632, 633–1068, 1069–1450, 1503–58, 1559–1615.

P 56, 61–74.

Q 180, 181.

V 598, 1837, 1839–1844, 1846–1854.

XA All of the XA series Contemporaneous Interview Notes contained in the Detailed Index are to be turned over except XA 20–29, 30–41, 42–51, 56–83, 84–104, 105–108, 280–87, 430–33, 434, 435, 436–440, 499–514, 515–529, 531.

XF 424–35, 436–505. Copies of these are to be supplied without the handwritten notes of the Tyler Commission member.