**Michael J. GRANZEIER; Michelle Blankenship; Heidi B. Sahrbacker, Plaintiffs–Appellants,**

v.

**Clyde MIDDLETON, et al., Defendants–Appellees.**

Nos. 97–5409, 97–6326.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1998.

Decided April 19, 1999.

---

Scott T. Greenwood (argued and briefed), Greenwood & Associates, Cincinnati, Ohio, for Plaintiffs–Appellants.

Garry L. Edmondson, Edmondson, Guenther & Rylee, Covington, Kentucky, Rita Ferguson (argued and briefed), Kenton County Attorney's Office, Covington, Kentucky, for Defendants–Appellees Clyde Middleton, Steve arlinghaus, Nioka Johnston, Bernie Moorman, Kenton County Fiscal Court.

James J. Grawe (argued and briefed), Office of the Attorney General, Civil Division, Frankfort, Kentucky, Stuart W. Cobb, Office of the Attorney General, Frankfort, Kentucky, for Defendants–Appellees Douglas Stevens, Patricia M. Summe, Greg Bartlett, Martin J. Sheehan, William L. Schmaedecke, Ann Ruttle, Frank O. Trusty, Mary Ann Woltenberg, Donald C. Buring.

Stuart W. Cobb, Office of the Attorney General, Frankfort, Kentucky, for Defendant–Appellee Steven R. Jaeger.

Rita Ferguson, Kenton County Attorney's Office, Covington, Kentucky, for Defendants–Appellees Mark E. Vogt, Bill Aylor, Garry L. Edmondson.

Before: WELLFORD, BOGGS, and MOORE, Circuit Judges.

BOGGS, J., delivered the opinion of the court. WELLFORD, J. (pp. 578–79), delivered a separate concurring opinion. MOORE, J. (pp. 579–81), delivered a separate dissenting opinion.

BOGGS, Circuit Judge.

Plaintiffs sought injunctive relief against the closing of county and state courts and offices on Good Friday. The district court granted partial summary judgment for each party. Its order enjoined Defendants from posting overtly religious signs announcing the closing and permitted Defendants to continue closing the building and offices on the Friday before Easter for a "Spring Holiday." Plaintiffs appeal the district court's denial of an injunction against the Good Friday closings and its reduced award of Plaintiffs' attorney's fees. For the reasons set forth below, we affirm the judgment of the district court in all respects.

I

In November 1995, the Kenton County, Kentucky, Fiscal Court, the Kenton District Court, and the Kenton Circuit Court, all located in the Kenton County Courthouse and Administration Building (the "Courthouse"), each entered orders adopting identical holiday closing schedules for 1996. Good Friday, April 5, 1996, was included in the orders. The federal district court found that "the courts and the offices in the [Courthouse] have closed on Good Friday for as many years as any witness in this case can remember." In early April 1996, George Neack, the Deputy Judge Executive of Kenton County, acting without the knowledge or authorization of any defendant, made signs bearing an image of the Crucifixion and announcing that the building would be closed "for ob-

servance of Good Friday," April 5, 1996. Neack had the signs posted at the entrances to the Courthouse.[1] Plaintiffs observed the signs and, on April 3, 1996, filed their lawsuit against the County Judge–Executive and various county officials who had offices in the Courthouse or whom Plaintiffs believed exercised control over the Courthouse (the "county defendants"), as well as various officers and judges of the state courts with offices in the Courthouse (the "state defendants"). When the county defendants received notification of the suit, they immediately had the signs removed and replaced by signs simply announcing that the building would be closed on April 5. Defendants admitted that the sign violated the Establishment Clause (U.S. CONST. amend. I) and stated on the record that no such signs would be posted in the future. The Courthouse was open on April 5, 1996, although the courts and most offices were not. Defendants now refer to the Friday before Easter as Spring Holiday on their calendars and closing orders.

The district court found that "[a]lthough the closing is to be observed on Good Friday, the day on which Christians remember Jesus' crucifixion, there is no evidence that the court and office closings are otherwise related to the Christian holiday." The court also found that the holiday is a secular event. Many Kentucky families begin a vacation that day; the court found that according to state traffic statistics, Good Friday had the third-largest daily traffic volume on Kentucky highways in 1995. Defendants also presented evidence that the courts were concerned about the availability of jurors on Good Friday.

On April 8, 1996, the district court filed its order denying Plaintiffs' request for a temporary restraining order. On December 31, 1996, all parties filed motions for summary judgment. On February 14,

---

1. Neack evidently spent some time with his new computer and its clip-art collection preparing illustrated signs for all the holidays.

1997, the district court declared that the sign Neack posted in April 1996 violated the Establishment Clause, and granted Plaintiffs' motion with respect to the sign. The court's February 27, 1997 injunction prohibits Defendants from posting signs that depict the Crucifixion or state that the closing is in observance of Good Friday. Its February 27, 1997 judgment permits Defendants to continue closing their offices on the Friday before Easter "if current practices are pursued and the Injunction is obeyed." The judgment also awards costs, "including appropriate attorney's fees," to Plaintiffs.

The state defendants moved to amend the judgment to reflect that they are not responsible for any attorney's fees awarded to Plaintiffs. Plaintiffs moved for the award of attorney's fees of $25,723.75 and litigation expenses of $207.95. The district court's May 5, 1997 order granted the state defendants' motion and referred the attorney's fees issue to a magistrate judge. On March 31, 1997, Plaintiffs appealed the judgment. On August 7, 1997, the magistrate judge issued a report recommending that Plaintiffs receive $4,617.95 for their attorney's fees. Plaintiffs objected. On October 7, 1997, the district court adopted the recommendation of the magistrate judge. Plaintiffs appealed the fee award, and the appeals have been consolidated before this court.

## II

■ Plaintiffs argue that the district court erred when it granted Defendants' motion for summary judgment allowing Defendants to continue closing the Courthouse and offices on the Friday before Easter. We review a district court's grant of summary judgment *de novo*, and its findings of fact for clear error. *Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Mich. Dep't of Natural Resources*, 141 F.3d 635, 638 (6th Cir. 1998) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041–42 (6th Cir.1992) and *Eastern Ky. Resources v. Fiscal Court of*

*Magoffin County*, 127 F.3d 532, 539–40 (6th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1512, 140 L.Ed.2d 666 (1998)). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Russell*, 156 F.3d 687, 690 (6th Cir.1998) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 365, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend. I. The First Amendment was made binding upon the states by the Fourteenth Amendment. *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 757, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995). In 1971, the Supreme Court articulated the well-known *Lemon* test to determine whether a statute violates the Establishment Clause:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion.

*Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (citations and quotation marks omitted).

■ In more recent decisions, the Court has applied the "endorsement" test to Establishment Clause cases. *See Lynch v. Donnelly*, 465 U.S. 668, 687–94, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring) (advocating a focus on excessive entanglement and government endorsement); *County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 593, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (applying the endorsement test and collecting Supreme Court cases applying the test); *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) (adop-

tion by eight Justices of the endorsement test for cases involving government speech). The endorsement test prohibits speech that a reasonable observer would think is an endorsement of religion by the government.

This Circuit has treated the endorsement test as a refinement or clarification of the *Lemon* test. *See Americans United for Separation of Church and State v. City of Grand Rapids,* 980 F.2d 1538, 1542–45 (6th Cir.1992) (*en banc*) (applying the endorsement test as a clarification of the second part of the *Lemon* test); *American Civil Liberties Union v. City of Birmingham,* 791 F.2d 1561, 1563 (6th Cir.1986) (applying the endorsement test as a refinement of the first two parts of the *Lemon* test); *American Civil Liberties Union of Ky. v. Wilkinson,* 895 F.2d 1098, 1103, 1105 (6th Cir.1990) (applying the endorsement test on its own, without relating it to the *Lemon* test); *Hawley v. City of Cleveland,* 24 F.3d 814, 820 (6th Cir.1994) (characterizing the *Allegheny* endorsement test as a "refined version" of the *Lemon* test); *Pinette v. Capitol Square Review and Advisory Bd.,* 30 F.3d 675, 678–79 (6th Cir. 1994) (applying the reasonable observer test as a refinement of the *Lemon* test), *aff'd,* 515 U.S. 753, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995); *Kunselman v. Western Reserve Local School District,* 70 F.3d 931, 932 (6th Cir.1995) (applying the endorsement test as a clarification of the second part of the *Lemon* test); *Chaudhuri v. State of Tennessee,* 130 F.3d 232, 236 (6th Cir.1997) (applying the endorsement test as a clarification of the first part of the *Lemon* test), *cert. denied,* —— U.S. ——, 118 S.Ct. 1308, 140 L.Ed.2d 473 (1998). We believe that the observations of a reasonable observer are more germane to the effects analysis than to the secular purpose analysis. Accordingly, we follow our *en banc* precedent in *Grand Rapids* and consider the endorsement test

a clarification of the second part of the *Lemon* test.

Because Defendants concede that the sign posted by Neack in 1996 was unconstitutional, the sole substantive issue on appeal is whether closing state and county offices on Good Friday is unconstitutional. Two other circuits have considered this question.[2] In *Cammack v. Waihee,* 932 F.2d 765 (9th Cir.1991), the Ninth Circuit found that Good Friday has become secularized in Hawaii and concluded that the state could declare it a holiday without violating the Establishment Clause. In *Metzl v. Leininger,* 57 F.3d 618 (7th Cir. 1995), the Seventh Circuit held that an Illinois statute making Good Friday a school holiday was unconstitutional, although the court limited its holding to the particular facts and apparently invited the state to reform its practice by adopting a new rationale for the closing:

> Building on *Cammack,* Illinois might have argued that the contemporary purpose of the Good Friday public school closing law is to provide a long spring weekend. . . . [However, t]he argument is no more than hinted at in the state's brief . . ., perhaps because its premise—that Illinois, like Hawaii, wants to create a long spring weekend in all its public schools—is false. Had Illinois made a forthright official announcement that the public schools shall be closed on the Friday before Easter in order to give students and teachers a three-day spring weekend, rather than to commemorate the crucifixion of Jesus Christ, we might have a different case.
>
> . . . .
>
> [W]e have left open the possibility that Illinois can accomplish much the same thing . . . by officially adopting a "spring weekend" rationale for the law,

---

**2.** On December 1, 1998, the Fourth Circuit heard oral arguments in the appeal of *Koenick v. Felton,* 973 F.Supp. 522 (D.Md.1997) (holding that a state statute creating a public-

school holiday from the Friday before Easter through the Monday after Easter does not violate the Establishment Clause).

in place of the governor's proclamation of a state religious holiday....

*Id.* at 622–24. These two cases suggest that holiday closings are suspect only if the purpose for which they are instituted is religious. Furthermore, *Metzl* implies that the fact that a particular closing was once constitutionally suspect does not prevent it from being reinstated in a constitutional form.

■ A government practice need not be exclusively secular to survive the first part of the *Lemon* test; unless it seems to be a sham, the government's assertion of a secular purpose is entitled to deference. *Chaudhuri,* 130 F.3d at 236 (6th Cir.1997). In the case now before us, Defendants presented credible evidence that Good Friday has become a day with secular effects in Northern Kentucky. Many school children are on Spring vacation the following week, and many Kentucky families start their vacations early, on Friday. Traffic statistics show that highway volume is very high on Good Friday. Courts and government offices do not expect much activity from the public, and the courts worry about the availability of jurors. Furthermore, the policymakers who set the holiday schedules testified that their goal was to provide a break for their employees at that time of year, conveniently scheduled on a day of light activity and proximate to many families' vacations.

■ Plaintiffs argue that Defendants' intention to continue closing for a Spring holiday on the Friday before Easter is a "sham." This argument implies that the sign posted for several days in 1996 irrevocably established an endorsement of religion, from which Defendants cannot retreat. We prefer Judge Posner's reasoning in *Metzl.* If Illinois could reinstate its Good Friday closing as a secular Spring Weekend celebration after the Seventh Circuit explicitly declared its former closing policy unconstitutional, *a fortiori* we see no reason that Defendants' policy here, if otherwise constitutional, should not remain so after an unautho-

rized employee posted an unconstitutional sign for a few days.

Plaintiffs have presented no evidence that there is no significant secular purpose for the holiday. They have argued that the sign posted in 1996 shows a sectarian purpose, and have speculated about the purpose of the holiday decades ago; however, these arguments do nothing to counter Defendants' evidence that there is now a secular purpose for the Spring Holiday and, therefore, the arguments do not address the first part of the *Lemon* test. Plaintiffs have also asserted that all future closings are shams because the 1996 sign permanently tainted the practice with a primarily sectarian purpose; however, we have rejected this argument. Because there is unrefuted, credible evidence of a significant secular purpose, the Spring Holiday satisfies the first part of the *Lemon* test.

■ Recent Supreme Court Establishment Clause jurisprudence sets a high bar for assertions of excessive government entanglement. *See, e.g., Agostini v. Felton,* 521 U.S. 203, 232–36, 117 S.Ct. 1997, 2015–16, 138 L.Ed.2d 391 (1997). In the case before us, public officials are not required to make religious determinations at all, much less on an ongoing basis. They simply decide on what dates their courts and offices will be closed. There is no entanglement here; therefore, Defendants' practice of closing the Courthouse and offices on the Friday before Easter satisfies the third part of the *Lemon* test.

■ The first and third parts of the *Lemon* test having been satisfied, the remaining question is whether the primary effect of Defendants' practice advances or inhibits religion. To answer this question we apply the endorsement test. Thus, the narrow question before us is whether reasonable observers would think that Kenton County is endorsing religion by closing its offices on the Friday before Easter. We hold that they would not.

Justice O'Connor thinks that the reasonable observer "must be deemed aware of the history and context of the community and forum," *Pinette,* 515 U.S. at 779–82, 115 S.Ct. 2440 (concurring, joined by Souter and Breyer, JJ.), while Justice Stevens would not impute any special knowledge to the reasonable observer, *id.* at 799–801, 115 S.Ct. 2440 (dissenting). Both views have been expressed in our cases, as well. *Cf. Grand Rapids,* 980 F.2d at 1543–44, 1549–50 (Boggs, J.) (imputing fairly detailed local knowledge to the reasonable observer) with *id.* at 1557–58 (Lively, J., dissenting) (contending for a more general observer with less local knowledge). We need not decide the exact scope of the knowledge to be attributed to the reasonable observer, because in the case before us even Justice Stevens's sparsely-informed observer would not believe that Defendants were endorsing religion.

Many of the details of our commonly observed calendar have religious roots. This includes our very style of calendar (the "Gregorian," named for Pope Gregory XIII, who devised it in 1582 to replace the pagan (and less accurate) "Julian" calendar, named for Julius Caesar). The names of our days (in English) advert to deities of the Romans (Saturday, from Saturn, the god of time) and Norsemen (Tuesday, from Tiu, the son of Odin; Wednesday, from Woden, or Odin, the chief deity; Thursday, from Thor, the god of thunder; and Friday, from Freyja, the wife of Odin). In Spanish (an official language in places under the United States Constitution, *see* 1 *L.P.R.A.* § 59 (1998)), the names for Sunday ("Domingo"—the Lord's Day) and Saturday ("Sábado"—the Sabbath) also have religious roots. Yet no one has seriously, and certainly not successfully, contended that the Establishment Clause is offended by the use of those names, nor by the practice of closing public offices almost universally on Sunday (the day observed as holy by most Christians) and frequently on Saturday (the day observed by Jews and some Christians) to the exclusion of other days that may have similar significance for some religions.

Nor is the Establishment Clause offended by the dating of government documents using a system computed from events based on the Christian religion, and apparently not even by the use in official proclamations of language reflecting the religious origins of that dating system. *See, e.g.,* 35 Weekly Comp. Pres. Doc. 58 (Proclamation 7163—Martin Luther King, Jr. Day Federal Holiday, January 15, 1999.)

In just the same way, holidays are established for the convenience of the citizens, and that convenience often is caused by individual motivations that may be a mix of secular and religious. The exact mix involved in Christmas Day (declared a federal holiday by that name, *see* 5 U.S.C. § 6103) has been thoroughly discussed. *See, e.g., County of Allegheny,* 492 U.S. at 579–80 & nn. 1–5, 109 S.Ct. 3086. Thanksgiving Day is observed by many citizens with thanks directed to one deity or another, and by other citizens with no such motivation. And Easter Sunday, though a day of overwhelming religious significance for Christians, (albeit frequently used for secular purposes, *see* Irving Berlin, *Easter Parade*), is universally observed with office closings, for it falls on Sunday.

Finally, we note the frequent practice of school districts with a large or even a moderate Jewish population of closing the schools when the religious holidays of Yom Kippur and, at times, Rosh Hashanah, fall on school days. *See, e.g.,* Lois M. Collins, *Professor Details Need to Separate Church, State,* DESERET NEWS, Nov. 21, 1998, at E1 (well-known political theorist Michael Walzer notes approvingly that school closings on Christmas and Yom Kippur are not "for religious reasons"); Bonnie Miller Rubin and Patricia Tennison, *Memories Help Console Victims' Families, Friends,* CHI. TRIB., September 11, 1994 (obituary notes successful drive by gentile to add "Rosh Hashanah and Yom Kippur as school holidays" in Chicago suburb "even though ... most students in

the district were not Jewish"); Editorial, *The Week That Was*, SYRACUSE POST-STANDARD, Jan. 25, 1997, at A8 (noting Good Friday and Yom Kippur as Albany school holidays); Staff, *School Profiles*, SYRACUSE POST-STANDARD, Aug. 29, 1996 (same, in Fayetteville–Manlius School District); Heather Camlot, *Why Synagogue Attendence Soars on Three Days Each Year*, JEWISH TELEGRAPHIC AGENCY, Aug. 9, 1996, at 8A (Rosh Hashanah and Yom Kippur closings at "many public schools"); *see also, Northern Indiana Public Service Co. v. Certain Underwriters at Lloyd's London*, 1996 WL 115466, *9 (N.D.Ind.1996) (unpublished) (depositions shall not be scheduled on or within one day of certain days including Good Friday and Yom Kippur); *U.S. v. Stanfa*, 1996 WL 368967, *1 (E.D.Pa. July 1, 1996) (unpublished) (jury excused "in observance of Yom Kippur"); *U.S. v. Myerson*, 684 F.Supp. 41, 45 (S.D.N.Y.1988) (trial postponed for Rosh Hashanah). Few would argue that any of these practices are done to establish the Jewish religion, but rather as a secular recognition of the practicalities of school or court attendance that might otherwise be disrupted, much as the Friday before the Kentucky Derby is a holiday for schools in the Louisville area, lest attendance be disrupted by observance of a tradition that approaches religious character in the area of this Judge's chambers.[3]

In short, so long as the finding can be made that there is a significant secular reason for closing on any particular date, a finding that the district judge made in this case and did not err in so finding, the fact that the closing is also convenient for persons of a particular faith does not render the closing unconstitutional.

A reasonable person who knew that many people in private and other public employment in the community had the day off and made plans to travel, and that the Courthouse had been closed on Good Friday for many years, would not think that the closing was an endorsement of religion absent an explicit endorsement such as the sign involved in this case. Because Defendants have been enjoined from future explicit endorsements, future closings will not make a reasonable person think that Defendants were endorsing religion. Plaintiffs are correct that the sign posted in 1996 could make a reasonable observer think that Defendants endorsed the Christian religion. However, we hold that the sign posted for several days in a past year by an errant official did not permanently taint the closings, and that a reasonable person contemplating a Spring Holiday celebrated on the Friday before Easter would not conclude that Defendants were endorsing religion.

### III

Plaintiffs argue that the district court erred when it awarded them $4,617.95 in attorney's fees rather than the $25,723.75 they requested. We review awards of attorney's fees for abuse of discretion. *Phelan v. Bell*, 8 F.3d 369, 373 (6th Cir.1993) (citing *Perotti v. Seiter*, 935 F.2d 761, 763 (6th Cir.1991)). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a

---

3. These examples are not meant, as has been suggested by one law review article, to imply a parceling out of religious favors, so much to Christians and so much to Jews. See Burton Caine, *"The Liberal Agenda": Biblical Values and the First Amendment*, 14 TOURO LAW REV. 129, 188–90 (1997). Rather, they simply show that a secular purpose to schedule public functions with the convenience of the citizenry in mind may turn out to be useful to citizens of a variety of faiths, or none at all. In addition, the examples remind us that the principle argued for by Plaintiffs, the impermissibility of *any* public action measured by ecclesiastical dates, would have far-reaching implications.

Nor do we imply that there could *never* be an instance where the declaration of a public day off could be seen by a reasonable observer as an endorsement. For example, if the establishing of one holiday and the cancelling of another was done under the aegis of interfaith rivalry without any secular justification, a reasonable observer might find endorsement. No such case is made here.

clear error of judgment." *Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir.1989) (citing *Balani v. Immigration and Naturalization Service,* 669 F.2d 1157 (6th Cir.1982)). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *First Technology Safety Sys. v. Depinet,* 11 F.3d 641, 647 (6th Cir.1993).

"In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

To be a "prevailing party," a party must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). In *Farrar v. Hobby,* 506 U.S. 103, 113, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Court explained that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties ... in a way that directly benefits the plaintiffs." *Id.* 506 U.S. at [111–12, 113 S.Ct. 566]. *See Citizens Against Tax Waste v. Westerville City School* [*Dist. Bd. of Educ.*], 985 F.2d 255, 257–58 (6th Cir.1993). The Supreme Court has rejected a "central issue test" which would require a party to succeed on the main issue of the litigation to be considered "prevailing." *Krichinsky* [*v. Knox County Sch.*], 963 F.2d [847,] 850 [ (6th Cir.1992) ] (citing *Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 790, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Rather, a party who partially prevails is entitled to an award of attorney's fees *commensurate to the party's success. Id.*

*Phelan,* 8 F.3d at 373 (citations edited; emphasis added). A starting point for determining a reasonable fee is the so-called "lodestar" method: the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate, producing a lodestar figure; the court can then adjust this figure to reflect the degree of success obtained. *Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933; *Cramblit v. Fikse,* 33 F.3d 633, 635 (6th Cir.1994). The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933.

The sign issue was significant in Plaintiffs' litigation, and the injunction prohibiting future signs of an overtly religious nature is "actual relief on the merits of [their] claim [that] materially alters the legal relationship between the parties ... in a way that directly benefits the plaintiffs." Accordingly, Plaintiffs are entitled to reasonable attorney's fees. The question before us is whether, by awarding Plaintiffs $4,617.95 instead of the $25,723.75 they sought, the district court abused its discretion.

"If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933. Plaintiffs here achieved very limited success—they secured an injunction against religious signs, but not against closing the Courthouse on Good Friday. Furthermore, the district court found that Plaintiffs' attorney had "not sufficiently demonstrated or documented the reasonableness of the hours or the hourly rate which he claims." The magistrate judge recommended reducing the hourly rate from $165 to $110 to reflect the prevailing rate in the local Covington legal market rather than the Cincinnati rate sought by attorney Greenwood. Similarly, the mag-

istrate judge recommended reducing the hourly rate for paralegal work from $50 to $40. The magistrate judge found that Greenwood's list of hours was "very vague and contains many discrepancies," and that its entries "appear ... excessive and redundant." He recommended reducing Greenwood's hours from 126.5 to 110 and his paralegal's hours from 41.75 to 34.75. The magistrate judge provided explicit enumeration of his adjustments. The lodestar amount—hours multiplied by rate—after adjustment is $12,100.00 for Greenwood's work plus $1,390.00 for the paralegal's work.

The magistrate judge noted that Plaintiffs prevailed on only one of two distinct issues, that the issue they prevailed on was concluded early in litigation, before much of the work was done, and that it was "ancillary to the key issue for which plaintiffs sought redress in this case." The magistrate judge concluded that 30% of the work was done on the issue upon which Plaintiffs prevailed. In addition, the magistrate judge found that 3% of attorney Greenwood's hours should be allowed for the application for attorney's fees and that Plaintiffs should receive the $207.95 in costs for which they asked. The magistrate judge recommended a total award of $4,617.95. Plaintiffs objected to the Report, primarily on two grounds: first, that the action arose in "greater Cincinnati" and that Cincinnati rates should be used in the lodestar calculation; and second, that the issues were "intimately related" such that reduction for partial success is inappropriate. On October 7, 1997, the district court overruled Plaintiffs' objections and adopted the Report.

Plaintiffs' objections, which are the same arguments advanced on appeal, are unfounded. The rate awarded by the court is the same rate awarded by the court to attorneys with more experience than Greenwood for work in Northern Kentucky. In their second objection, Plaintiffs simply overlook the paragraphs of *Phelan* and *Hensley* clearly stating that attorney's

fee awards are to be proportional to the prevailing party's degree of success. The fact that the claims are interrelated is not relevant. If a plaintiff has only limited success, the lodestar amount will be excessive "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933. The magistrate judge's calculations are careful, thorough, and explicit, and they well justify both the lodestar amount and the conclusion that Plaintiffs are entitled to only thirty-three percent of the lodestar amount in view of their limited success. Therefore, the district court did not abuse its discretion when it reduced the award.

## IV

Defendants have done all they can do to prevent any impression that they are endorsing religion in closing their building and offices for a Spring Holiday on the Friday before Easter. Their efforts are sufficient to avoid offending the Establishment Clause. The sign posted for several days in 1996 does not continue to affect observers; nor does the holiday's date, chosen for secular reasons but measured by the date of a religious holiday, by itself cause reasonable observers to believe that Defendants are endorsing religion. Therefore, we AFFIRM the judgment of the district court in all respects.

WELLFORD, Circuit Judge, concurring.

I concur in Judge Boggs' opinion in this difficult case. I do not construe the opinion, however, as the dissenting judge seems to infer, as holding that it is constitutionally permissible for public schools with sizeable Jewish student bodies to close for Jewish religious holidays. That question is not before us. Rather, I see that reference in the opinion as showing that apparently this viewpoint is widespread, and that particular circumstances of religious significance are intertwined with secular considerations. The point is

that if there is a legitimate secular reason for closing public facilities on a given date, that the chosen date falls at a time of religious observance of some citizenry, does not render the decision to close unconstitutional. Thanksgiving, for example, has strong religious connotations to some faiths; religious services and celebrations may take place on that day, but the public closing and recognition of thanks to the Deity (back to the Puritan heritage) does not render this holiday unconstitutional.

I note also my agreement with the point that a mistaken public official's action at the outset (subsequently enjoined with costs and fees assessed against the County) does not permanently taint the setting of a spring holiday on the weekend of Easter. I do not perceive public perception of "widespread governmental endorsement of religion" in the action under consideration.

"The government's purpose need not be exclusively secular ... for a '[f]ocus exclusively on the religious component significance of any activity would inevitably lead to its invalidation....' ... [T]he government's assertion of a legitimate secular purpose is entitled to deference." *Chaudhuri v. State of Tennessee*, 130 F.3d 232, 236 (6th cir.1997) (citations omitted). If any *endorsement* of religion occurred, it was, as in *Chaudhuri*, "indirect and incidental," in my view, and was not an unconstitutional action under the Establishment Clause.

MOORE, Circuit Judge, dissenting.

I would hold that the practice of closing the state and county courts and offices of Kenton County, Kentucky, on Good Friday, a purely religious holiday, fails to satisfy both the secular purpose and secular effects prongs of our Establishment Clause jurisprudence. Accordingly, I respectfully dissent.

The majority asserts that the secular purpose prong of the *Lemon* test is satisfied if there is "credible evidence of a significant secular purpose" behind the choice of Good Friday for the Kenton County spring holiday. *Ante* at ——. As an initial matter, I believe that this formulation understates the burden that should be borne by the defendants in this case. Although "a totally secular purpose is not required," *ACLU v. City of Birmingham*, 791 F.2d 1561, 1565 (6th Cir.), *cert. denied*, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986), it is clear that the "secular purpose ... requirement is not satisfied ... by the mere existence of some secular purpose, however dominated by religious purposes." *Lynch v. Donnelly*, 465 U.S. 668, 690–91, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring). The Supreme Court has not declared how dominant the secular purpose must be under this test, but to avoid trivializing the requirement we should examine the primary or actual purpose that underlies the selection of Good Friday as an official holiday. *See id.* at 690, 104 S.Ct. 1355 (O'Connor, J., concurring) ("purpose prong ... asks whether government's actual purpose is to endorse or disapprove of religion"); *Wallace v. Jaffree*, 472 U.S. 38, 56, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (same); *Edwards v. Aguillard*, 482 U.S. 578, 585, 590–92, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (addressing the "actual," "predominate [sic]," "preeminent," or "primary" purpose of statute); *see also Cammack v. Waihee*, 932 F.2d 765, 783 (9th Cir.1991) (Nelson, J., dissenting).

However, even under the arguably more deferential standard followed by this court in *Chaudhuri v. Tennessee*, 130 F.3d 232, 236 (6th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1308, 140 L.Ed.2d 473 (1998), I would conclude that no legitimate secular purpose has been shown. We must focus, of course, not on the establishment of a spring holiday but on the selection of Good Friday for that holiday. Here, the purported secular purpose for closing on Good Friday is to accommodate the travel plans of employees, jurors, and others who use the courts. It is noted that many schools and other government offices

are closed on this day, and the defendants have provided state highway statistics that demonstrate that Good Friday is, indeed, a very busy travel day. Closing to accommodate travel that is generated by other equally unconstitutional governmental observances of the Good Friday holiday does not constitute a legitimate secular purpose, however. If it did, a state government could observe any religious holiday without violating the secular purpose test, if it closed schools and offices throughout the state and enough citizens took advantage of the holiday to travel.

Moreover, I conclude that the selection of Good Friday as the spring holiday violates the secular effects test. The question, as the majority correctly observes, is whether "a reasonable observer would conclude that the message communicated is one of either endorsement or disapproval of religion." *Chaudhuri*, 130 F.3d at 237. The majority and I disagree, however, on the message that is communicated in this instance. In the majority's view, the message transmitted is one of local government officials choosing a holiday date that is convenient for employees and others, while minimizing the religious significance of the holiday. I believe, on the other hand, that a reasonable observer (of either the O'Connor or Stevens persuasion) would discern state and local government and school officials agreeing to close on a date that has purely Western Christian significance and, thus, would perceive widespread governmental endorsement of religion. In my view, the reasonable observer would not conclude that convenience dictated the selection of Good Friday as a uniform spring holiday because she would realize that any given Friday or

Monday in March or April would serve as well.

Likewise, I cannot agree with the majority's view that it is constitutionally permissible for public schools with sizable Jewish student-bodies to close for Jewish religious holidays. In either case the religious needs of the observant can be accommodated without closing the public institution on the holiday and endorsing a particular religion. The closure of government offices on Christmas, Thanksgiving, and Sundays, is, I believe, easily distinguishable from a closure on Good Friday or Rosh Hashanah. Despite their religious origins, the former holidays are now secularized to a significant extent. *See County of Allegheny v. ACLU*, 492 U.S. 573, 579 & n. 3, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (secular dimensions of Christmas); *id.* at 631, 109 S.Ct. 3086 (O'Connor, J., concurring) (Thanksgiving a celebration of patriotic values); *McGowan v. Maryland*, 366 U.S. 420, 451–52, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) (secular aspects of Sunday). The same simply cannot be said for the latter holidays.[1]

I recognize that requiring the defendants to adopt an alternative spring holiday, e.g., the last Friday in March, could create some temporary inconvenience.[2] After all, the Kenton County Judge Executive cannot dictate a change in government holidays throughout the state. However, we cannot allow the decentralization of decision making within the state or county to insulate a governmental entity from its obligations under the Establishment Clause. Moreover, nothing precludes state and local officials from agreeing on an alternative uniform spring holiday, and were we to hold in favor of the plaintiffs,

1. I am somewhat mystified by the majority's reference to the religious origins of the names of the days. No government, to my knowledge, has dictated the names of the days, and, even if these names are officially recognized, no reasonable observer would sense in their use an endorsement of Roman or Norse mythology. Given the dominance of Western Christian belief in this country, it appears to

me that the majority's analogy trivializes the issue before us.

2. It should go without saying that the fact that a spring holiday that is based on the secular calendar, such as the last Friday in March, occasionally coincides with Good Friday would not render the holiday unconstitutional.

as I believe we should, I suspect that this is exactly what would happen.

The closure of the institutions of government in this country is a traditional mark of solemn observance and respect. Despite its widespread adoption, I can see no *legitimate* secular purpose in the government observing this purely sectarian holiday, and, because a spring date lacking religious significance would serve as well, I believe that a reasonable observer would perceive an endorsement of Western Christianity. Accordingly, I dissent.