Russell BRIDENBAUGH,
Plaintiff–Appellant,

v.

Frank O'BANNON, in his official
capacity as Governor of the State
of Indiana, Defendant–Appellee.

No. 98–3058.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1999.

Decided July 21, 1999.

Kenneth J. Falk (argued), Indiana Civil Liberties Union, Indianapolis, IN, for Plaintiff–Appellant.

Anthony W. Overholt (argued), Office of Attorney General, Indianapolis, IN, for Defendant–Appellee.

Before FAIRCHILD, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

By statute, Indiana state employees have a day off with pay on Good Friday, as they do on at least eleven other legal holidays during the year. Russell Bridenbaugh sued Frank O'Bannon, Indiana's Governor, in his official capacity, contending that providing Good Friday as a legal holiday was a "law respecting an establishment of religion" and so violated the First Amendment. The parties consented to have the case heard by a magistrate judge, who granted the defendant summary judgment. Bridenbaugh appeals. We affirm.

## BACKGROUND

Indiana ranks as one of the most generous states in terms of the number of legal holidays it gives to its employees—fourteen in election years and twelve in non-election years. On legal holidays in Indiana, state employees have the day off with pay, and most Indiana state offices are closed. Those which remain open,

such as prisons, police stations and hospitals, use minimal staffing. Legal holidays recognized in Indiana are: New Year's Day; Martin Luther King, Jr.'s birthday, commemorated on the third Monday in January; Abraham Lincoln's birthday, February 12; George Washington's birthday, which is observed on the third Monday in February; Good Friday, which is the Friday preceding Easter Sunday; Memorial Day; Independence Day; Labor Day; Columbus Day, observed on the second Monday in October; Primary Election Day; Election Day; Thanksgiving Day; and Christmas Day. Ind.Code 1–1–9–1. The statute which establishes these legal holidays also authorizes the Governor to shift the date on which the holiday is observed, although the Governor cannot move the day of observance for Martin Luther King, Jr.'s birthday. Ind.Code 1–1–9–2. Thus, even though both Lincoln's birthday and Washington's birthday fall in February, in order to give employees a longer consecutive holiday, the Governor generally moves these holidays to the day after Thanksgiving and to either the day before or after Christmas. Because Lincoln's and Washington's birthdays are not observed in February, absent the Good Friday holiday employees would be without a holiday for more than four months (between Martin Luther King, Jr.'s birthday and Memorial Day).

Good Friday has been a legal holiday in Indiana since 1941. On Good Friday, Christians commemorate the death of Jesus Christ, whom they believe to be the Messiah. The date on which Good Friday is observed changes from year to year because it always falls on the Friday before Easter, and Easter falls on different dates in different years.[1] *See* Ind.Code, 1–1–9–1 (enumerating legal holidays in Indiana, including "Good Friday, a movable feast day").

Russell Bridenbaugh believes that by giving employees a legal holiday on Good Friday, Indiana is violating the Establishment Clause of the United States Constitution. He sued the Governor of Indiana, Frank O'Bannon, in his official capacity, seeking declaratory and injunctive relief. (For simplicity, we will refer to the defendant as "Indiana.") The parties filed cross-motions for summary judgment. The magistrate judge granted Indiana summary judgment, concluding that Section 1–1–9–1 of the Indiana Code does not violate the Establishment Clause because Indiana has presented evidence of a secular justification for the holiday.

## ANALYSIS

■ The First Amendment, which applies to the states via the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . . ." The Supreme Court has frequently wrestled with how to apply the Establishment Clause, most significantly in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). In *Lemon,* the Court adopted a three-prong test for determining the constitutionality of governmental action. A law does not run afoul of the Establishment Clause if: (1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion. *Lemon,* 403 U.S. at 612–13, 91 S.Ct. 2105.

■ While some have questioned the continued validity of the *Lemon* test—preferring the so-called endorsement test articulated in Justice O'Connor's concur-

---

1. Easter is celebrated on the first Sunday after the first full moon following the vernal equinox. However, because the Eastern and Western Christian Churches use different calendars—Western Churches use the Gregorian calendar, while Eastern Churches use the Julian calendar—and because in the Eastern Church Easter must follow the Jewish Passover, Christians around the world sometimes celebrate Easter on different dates. Indiana apparently ties the Good Friday holiday to the date of Easter celebrated by Christians descended from the Western Church.

rence in *Lynch v. Donnelly*, 465 U.S. 668, 699, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), *see also Capitol Square Review and Advisory Board v. Pinette*, 515 U.S. 753, 763, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995); *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 592, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989)—the Supreme Court recently reaffirmed that "the general principles we use to evaluate whether government aid violates the Establishment Clause have not changed...." *Agostini v. Felton*, 521 U.S. 203, 222–23, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). Thus, the Court "continue[s] to ask whether the government acted with the purpose of advancing or inhibiting religion, and the nature of that inquiry has remained largely unchanged. Likewise, [the Court] continue[s] to explore whether the aid has the 'effect' of advancing or inhibiting religion...." *Id.* at 222–23, 117 S.Ct. 1997. And finally, the Court still considers whether the governmental action resulted in an excessive entanglement between church and state. *Id.* at 232, 117 S.Ct. 1997. In applying our Establishment Clause analysis, we must recognize that the Clause is not absolute; it does not prohibit all interaction between government and religion. As the Court stated, "[i]n every Establishment Clause case, we must reconcile the inescapable tension between the objective of preventing unnecessary intrusion of either the church or the state upon the other, and the reality that, as the Court has so often noted, total separation of the two is not possible." *Lynch v. Donnelly*, 465 U.S. 668, 672, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984).

■ In this case, Bridenbaugh contends that Indiana's Good Friday holiday fails the first and second prongs of the *Lemon* test; he asserts that the Good Friday holiday lacks a secular justification, and that it has the principal or primary effect of advancing religion. (Bridenbaugh does not claim that the holiday creates an excessive entanglement between church and state.)

The district court rejected these arguments. It concluded that while the Good Friday holiday has "the potential effect of making it easier for religious Christian state employees to practice their religion," Indiana had established a valid secular justification for the Good Friday holiday—to provide a long spring weekend for its employees. Accordingly, the district court upheld the constitutionality of the Good Friday holiday and granted Indiana summary judgment.

In reaching this conclusion, the district court relied heavily on our decision in *Metzl v. Leininger*, 57 F.3d 618 (7th Cir. 1995). In *Metzl*, the plaintiff sued Illinois alleging that Illinois violated the Establishment Clause when it made Good Friday a legal holiday in the public school system. Illinois argued that the holiday was justified for secular reasons because it would "save the school system the expense of keeping the schools open on a day when very few teachers and students can be expected to attend." *Id.* at 621. Metzl recognized that "a law that promotes religion may nevertheless be upheld either because of the secular purposes that the law also serves or because the effect in promoting religion is too attenuated to worry about." *Id.* at 620. However, *Metzl* held that where the government asserted a secular justification for a law, it bore the burden of producing evidence to support that justification, and that Illinois had failed its burden because it had not presented evidence of "how many students and teachers, in each of the state's public school districts, would absent themselves from Good Friday if the challenged state law did not require the schools to be closed that day." *Id.* at 621. While *Metzl* concluded that Illinois had failed its burden, it also recognized that we would have a different case if "Illinois had made a forthright official announcement that the public schools shall be closed on the Friday before Easter in order to give students and teachers a three-day spring weekend, rather than to commemorate the crucifixion of Jesus Christ...." *Id.* at 623. Although

this comment can be labeled *dictum* in *Metzl* because Illinois had offered a substantially different justification, providing a spring holiday was the precise purpose in the other two appellate decisions addressing an Establishment Clause challenge to a Good Friday closing. These courts upheld the closing based on that secular purpose. *See Cammack v. Waihee*, 932 F.2d 765 (9th Cir.1991) (closing Hawaii public schools); *Granzeier v. Middleton*, 173 F.3d 568 (6th Cir.1999) (closing Kentucky county courts). In this case, like Hawaii and Kentucky but unlike Illinois, Indiana also justifies its Good Friday closing as accomplishing the secular purpose of providing a spring holiday.

While there is no legislative history explaining the original reason for the Good Friday holiday—which would not be dispositive anyway, *Metzl*, 57 F.3d at 621—Indiana has officially stated that it continues to recognize Good Friday as a legal holiday in order to provide a spring holiday to state employees during a time period in which there would be over four months without a holiday (between Martin Luther King, Jr.'s birthday, observed January 20, 1997, and Memorial Day, observed May 26, 1997).[2] Indiana also presented evidence that it believes that it serves its interests as an employer to give generous holidays—including the Good Friday holiday—because holidays bolster employees' efficiency and morale. Additionally, Indiana submitted evidence that Good Friday is a good Friday for a long weekend, not only because it falls during a vacation-vacant period, but also because over thirty percent of the schools in Indiana are closed on Good Friday, and because forty-four percent of employers in

a nine-state region, including Indiana, allow their employees to take Good Friday as a holiday.[3] Thus, as the district court explained, "it is logical for the State to choose that day as its spring holiday, as an accommodation to those state employees whose children are out of school and/or spouses are off work." Therefore, unlike *Metzl*, here Indiana has provided evidence of several secular justifications for the Good Friday holiday and has thus satisfied the first prong of *Lemon*.

The plaintiff does not challenge Indiana's desire to give employees a spring holiday, but argues that the State failed to prove a secular reason for choosing Good Friday—as opposed to any other Friday—as the day for that holiday. Citing Indiana's own statistics and a newspaper article that reports that most business are open on Good Friday, Bridenbaugh asserts that because a majority of schools and businesses are open on Good Friday, Indiana could have chosen a better day for a spring holiday—although he does not tell us what that day would be. Although the record shows that nearly seventy percent of public schools and more than half of all businesses are open, the record does not show that a higher percentage of schools and businesses give a spring holiday on any other Friday or Monday in the spring. On this record, then, no other day would be a more reasonable choice to make a long weekend for a spring holiday. *See Metzl*, 57 F.3d at 623 ("Even if more than a handful would show up—even if most would show up—if fewer would show up than on any other Friday or Monday in the spring, it would be the natural choice for elongating a spring weekend.").[4]

---

**2.** The Governor designated Keith Beesley, an attorney for the State Personnel Department, as the State's agent authorized to speak on its behalf in this litigation.

**3.** While statistics for Indiana alone (assuming they existed) may have been more persuasive, the statistics offered support Indiana's position, especially when one considers that families often travel interstate on holiday weekends.

**4.** The dissent misapprehends Indiana's factual burden here, concluding that Indiana had not "fulfilled [its] burden of proof that if there was no Good Friday holiday, demands by employees for leave on that day would create a significant problem for state government." *Post* at 803 (*citing Metzl*, 57 F.3d at 622). Indiana need not show that here because, unlike Illinois, Indiana has not justified its Good Friday closing as a response to higher

But Bridenbaugh essentially argues that Indiana could never create a sufficient record to support its secular purpose. He reasons that because Good Friday is a religious holiday—unlike Thanksgiving and Christmas, which he characterizes as "secularized"—a state could only have the purpose of advancing religion when it gives its employees this day off. This argument misconstrues the law. Indeed, under his reasoning Sunday closing laws would be illegal because the day of rest chosen by the state coincides with most Christians' day of rest. But we know that that is not the case. *McGowan v. Maryland*, 366 U.S. 420, 452, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). In *McGowan*, the Court recognized the state's secular purpose in requiring one day of general rest. *Id.* at 436, 81 S.Ct. 1101 (" 'Laws setting aside Sunday as a day of rest are upheld, not from any right of the government to legislate for the promotion of religious observances, but from its right to protect all persons from the physical and moral debasement which comes from uninterrupted labor.' ") (*quoting Soon Hing v. Crowley*, 113 U.S. 703, 710, 5 S.Ct. 730, 28 L.Ed. 1145 (1885)). Moreover the Court recognized the secular benefit from a uniform day of rest rather than, as the petitioners suggested, merely requiring that all persons individually pick some day on which to rest. Similarly, as an employer, Indiana has an important interest in setting aside one day as a uniform spring holiday for all employees rather than merely giving them the choice of picking whichever day they individually wanted to take off—this permits Indiana to close down all non-essential services on one day rather than trying to cover for vacationing employees. And similarly to Bridenbaugh here, the petitioners in *McGowan* argued that even if the state had a secular interest in making some day the day of rest, they could not chose Sunday because that day has religious significance. The Court rejected that argument.

"[T]he fact that this day is Sunday, a day of particular significance for the dominant Christian sects, does not bar the State from achieving its secular goals." *Id.* at 445, 81 S.Ct. 1101; *see also id.* at 442, 81 S.Ct. 1101 (Establishment Clause not offended when state law's reason or effect coincides with religious ones).

Moreover, Bridenbaugh misconstrues the Supreme Court's decisions approving government involvement in Christmas and Thanksgiving. The Court has never said these holidays have become wholly secular; indeed it has said the opposite. "[Thanksgiving] has not lost its theme of expressing thanks for Divine aid any more than has Christmas lost its religious significance." *Lynch*, 465 U.S. at 675, 104 S.Ct. 1355 (footnote omitted). In *Lynch* the Court upheld a city actually celebrating Christmas by erecting a display that included a creche. Like Bridenbaugh here, the respondents asserted that because the creche was religious in nature, necessarily there could be no secular purpose in adding it to the Christmas display. The Court rejected this reasoning. It concluded that celebrating the holiday season and depicting its historical origins in the display were legitimate secular purposes. *Id.* at 681, 104 S.Ct. 1355. And the Court noted that a secular purpose need not be the exclusive one; it was sufficient if the government had "*a* secular purpose." *Id.* at 681 n. 6, 104 S.Ct. 1355 (emphasis supplied). Similarly, in *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), the Court held that the government could actually celebrate Chanukah and Christmas with holiday displays, but such displays could not include a display that, unlike the one in *Lynch*, conveyed nothing but a religious message. *Id.* at 600–02, 109 S.Ct. 3086. The Court stated: "*Lynch* teaches that government may celebrate Christmas in some manner and form, but not in a way

---

absenteeism. Like Hawaii in *Cammack* and Kentucky in *Granzeier,* Indiana's secular justification is to provide a spring holiday. Thus,

its burden is merely to show that it had a secular justification for choosing Good Friday for that holiday. It has met that burden.

that endorses Christian doctrine." *Id.* at 601, 109 S.Ct. 3086. The reasoning of those cases applies with added force in this case because, as we note below, Indiana does not celebrate Good Friday at all; it merely gives its employees a paid holiday. Under the Court's precedent Bridenbaugh's argument fails: the religious nature of Good Friday, without more, does not compel the conclusion that Indiana lacks a secular motive. If that were true, *Lynch* and *Allegheny* would have been decided differently.

Of course, Indiana could not prevail if its secular justification was merely a sham. *See Edwards v. Aguillard*, 482 U.S. 578, 586–87, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) ("While the Court is normally deferential to a State's articulation of a secular purpose, it is required that the statement of such purpose be sincere and not a sham."). But nothing indicates that Indiana's stated secular purpose is a sham, and in fact its rationale for the Good Friday holiday is consistent with its demonstrated practice of giving its employees long weekends around traditionally celebrated holidays. For instance, instead of celebrating Lincoln and Washington's birthdays in February, Indiana has moved the legal holidays to the Friday after Thanksgiving, and the day before or after Christmas. Similarly, by giving its employees the day off on the Friday before Easter, employees benefit by having a three-day weekend during a time which typically involves travel, shopping, cooking, and family gatherings. While there may be few secular aspects surrounding Good Friday, there are many secular aspects to Easter—the Easter bunny, Easter baskets, jelly beans, dyed eggs, and Easter-egg hunts. *Metzl*, 57 F.3d at 620. And Indiana has intrinsically tied the Good Friday holiday to the now-secularized Easter holiday by making it a "movable feast day."[5] Just as Indiana is justified in giv-

ing its employees extended holidays around Thanksgiving and Christmas, so too is it justified in giving employees a long Easter weekend.

Bridenbaugh also asserts that the Good Friday holiday violates the second prong of *Lemon*; Bridenbaugh argues that the holiday has the principal effect of advancing religion and represents an endorsement of religion because there is no secular justification for the Good Friday holiday. This argument dovetails with his first, and, as discussed above, fails because the State has established several legitimate secular justifications for the Good Friday holiday, and has presented evidence supporting those justifications.

That leaves Bridenbaugh arguing that the Good Friday holiday advances religion because it makes it easier for Christians to practice their faith by having the day off on a day which (to them) is · a religious holiday. It is true that by giving a holiday on Good Friday, it is easier for those who wish to attend religious services to do so. But that is potentially true of every legal holiday. For instance, by giving workers a holiday on Thanksgiving and Christmas, employees may more easily participate in religious services. As the Supreme Court explained in *McGowan* in upholding the constitutionality of Sunday closing laws, "it is equally true that the 'Establishment' Clause does not ban federal or state regulation of conduct whose reason or effect merely happens to coincide or harmonize with the tenets of some or all religions." *McGowan*, 366 U.S. at 442, 81 S.Ct. 1101. Similarly, the Establishment Clause does not prohibit Indiana from choosing Good Friday as the day for a legal holiday merely because that day coincides with what, to some, is a religious day. No court has ever held that the Establishment Clause is violated merely because a state holiday has

---

5. It is a bit of a mystery (and will remain so) why in 1941 the Indiana legislature labeled Good Friday as a movable "feast." In Christian terms, at least, that would certainly be a

misnomer. The obvious movable feast, to which Good Friday is inextricably tied, is Easter, now largely secularized.

the indirect effect of making it is easier for people to practice their faith. Rather, the Supreme Court has made clear that "not every law that confers an 'indirect, remote, or incidental' benefit upon religion is, for that reason alone, constitutionally invalid." *Lynch,* 465 U.S. at 683, 104 S.Ct. 1355. Thus, in *Lynch,* the Supreme Court concluded that a city's ownership and display of a creche is constitutional because "whatever benefit there is to one faith or religion or to all religions, is indirect, remote, and incidental; . . . ." *Id.* Likewise, any benefit to religion flowing from the Good Friday holiday is indirect, remote and incidental to the primary secular purposes for the holiday.

Moreover, Indiana does not celebrate the religious aspects of Good Friday; for Indiana, the holiday has absolutely no religious significance. To Indiana, Good Friday is nothing but a Friday falling in the middle of the long vacationless spring—a day which employees should take off to rejuvenate themselves. This contrasts sharply with other legal holidays such as Martin Luther King, Jr., Day where the government not only gives the day off, but endorses Martin Luther King, Jr.'s philosophies and principles. *See* Ind.Code § 4–23–24.1–9. With Good Friday, Indiana simply gives its employees the day off. Because the *government itself* has not used its own activities and influence to advance religion, it has not established a religion by giving a holiday on Good Friday. *See Cohen v. City of Des Plaines,* 8 F.3d 484, 491 (7th Cir.1993) ("For a law to have forbidden 'effects' under *Lemon,* it must be fair to say that the *government itself* has advanced religion through its own activities and influence."). Therefore, the Good Friday holiday also satisfies *Lemon 's* second prong.

## CONCLUSION

Indiana has presented evidence of several secular purposes served by the Good Friday holiday, none of which have the principal effect of advancing religion.

Thus, although it may be easier for some Christians to worship with the day off, that indirect effect does not violate the Establishment Clause. Therefore we hold that Section 1–1–9–1 of the Indiana Code is constitutional.

AFFIRM.

FAIRCHILD, Circuit Judge, dissenting.

With all respect, I conclude that the judgment appealed from should be reversed.

I have no quarrel with the proposition that the State of Indiana is free to designate a holiday in March or April in order to provide a holiday for its employees partway through the four-month period between Martin Luther King, Jr. Day, in January, and Memorial Day, in May. Further, it is free to designate a Friday or Monday in order to extend a weekend to three days. Had it designated, for example, the first Friday in April, the fact that the day would be Good Friday in some years could hardly make the designation a violation of the Establishment Clause of the First Amendment. The real issue here is whether the State's choice of Good Friday as the spring holiday in every year is supportable under the *Lemon* test.

We should not lose sight of the fact that the judgment appealed from rests upon a grant of summary judgment, and not a trial. Review is *de novo,* without deference to conclusions reached by the magistrate judge, even where labeled a finding.

The first element of the *Lemon* test, is whether the selection of Good Friday as the spring holiday, beginning a three-day weekend, has a secular purpose. The state's decision to afford its employees a long weekend after Martin Luther King, Jr. Day and before Memorial Day is surely secular in nature, but the Establishment Clause question arises because the state has selected Good Friday, for many people a day of religious observance, the changing date of which is determined by purely religious tradition. The burden of pre-

senting evidence of justification rests on the state. *Metzl v. Leininger*, 57 F.3d 618, 622 (7th Cir.1995).

In my view the evidence offered by the State would not support a finding that the purpose of selecting Good Friday, rather than a specific Friday or Monday in spring, was secular. The parties stipulated that there is no legislative history showing why Good Friday was made a legal holiday. I note, however, that the text of the statute characterizes Good Friday as "a movable feast day." Although "feast day" seems inappropriate to the events believed by Christians to have occurred on the first Good Friday, those who put these words in the statute in 1941 must have had in mind the religious character of Good Friday.

The parties also agreed that "The State has specified that the sole current secular purpose for the Good Friday holiday is that it provides a Spring holiday for State employees." The only testimony indicating why Good Friday could have been chosen was that of Mr. Beesley, the Governor's designee, as follows, "I think Good Friday works out well, because as I say, it's a natural travel time for a lot of us. But any day could have been picked for that purpose. And it does fall, as I said, I think, in the response to interrogatories, happily about halfway between Martin Luther King's Birthday and Memorial Day."

There was evidence that "Nationwide, 35% of employers give the day off to their employees on Good Friday. (1997 Survey). In the East Central region [composed of Indiana and eight other states], that number climbs to 44%.... In the East Central region, 34% of government employers designate Good Friday as a holiday as do 52% of education employers.... [O]f the 293 school districts in the state, 89 closed on Good Friday." Based on this evidence, the magistrate judge concluded that "Good Friday is the logical choice for a spring holiday, because some state employees undoubtedly would seek to take that day off because their children and/or spouses have a school holiday or a day off work." There was also evidence that in the Indianapolis area, where most state employees presumably reside, "State and City–County offices, county courts and stock markets were closed on Good Friday [1997]. However, federal offices, most schools, stores and banks were open." With all respect, I do not think the equivocal Beesley testimony about travel time and the statistical evidence about school and business holidays in a nine-state region fulfilled the State's burden of proof that if there were no Good Friday holiday, demands by employees for leave on that day would create a significant problem for state government. *See Metzl*, 57 F.3d at 622. Indeed the State says: "evidence of business necessity was not offered as a reason for Indiana's holiday simply because that is not why Indiana has a Good Friday holiday." Brief of Appellee, p. 16. Moreover the record gives no reason to believe that employees who desire to travel on the Easter weekend are not motivated by the religious significance of Easter to them.

The second element of the *Lemon* test is that the principal or primary effect of choosing Good Friday for the spring holiday neither advances nor inhibits religion. Almost by definition the choice of Good Friday advances the Christian religion (except, perhaps for those Christians who are adherents of the Eastern Church, whose tradition often puts Holy Friday on a different date). Those employees who do not observe Good Friday and who wish to take time off on a different day of religious observance must make a request and use a vacation, compensatory, or personal day or leave without pay. Thus their making that choice imposes a cost. There are circumstances under which the request may not be granted. The State's choice of Good Friday fails this element of the *Lemon* test as well. "[T]he First Amendment does not allow a state to make it easier for adherents of one faith to practice their religion than for adherents of another faith to prac-

tice *their* religion unless there is a secular justification for the difference in treatment." *Metzl*, 57 F.3d at 621.

The majority relies on a suggestion in *Metzl* that

> Had Illinois made a forthright official announcement that the public schools shall be closed on the Friday before Easter in order to give students and teachers a three-day spring weekend, rather than to commemorate the crucifixion of Jesus Christ, we might have a different case.

*Metzl*, 57 F.3d at 623. "[M]ight have a different case" is scarcely a definitive ruling, and at best would be dictum. In any event, there is no "forthright official announcement" by Indiana.

> Some holidays that are religious, even sectarian, in origin, such as Christmas and Thanksgiving, have so far lost their religious connotation in the eyes of the general public that government measures to promote them, as by making them holidays or even by having the government itself celebrate them, have only a trivial effect in promoting religion. Even Easter is becoming gradually secularized;....

*Metzl*, 57 F.3d at 620. *See Lynch v. Donnelly*, 465 U.S. 668, 681, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). The Supreme Court found a sufficient secular purpose in a state's choice of Sunday as a required day of rest. *McGowan v. Maryland*, 366 U.S. 420, 452, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Good Friday, however, does not have the relevant attributes of Sundays, Christmas and Thanksgiving.

> It is a day of solemn religious observance, and nothing else, for believing Christians, and no one else. Unitarians, Jews, Muslims, Buddhists, atheists— there is nothing in Good Friday for them, as there is in the other holidays we have mentioned despite the Christian origins of those holidays.

*Metzl*, 57 F.3d at 620.

Even if, contrary to my view, the State's evidence could support a finding that the State had a secular purpose in maintaining the Good Friday holiday, and that it did not advance the Christian religion, the character of Good Friday itself and the affidavit of a professor of theology negating secularization of Good Friday are conflicting evidence which would pose a genuine issue of fact, and the result should then have been to deny both cross motions for summary judgment, and proceed to trial.

With all respect, however, I conclude that the evidence is insufficient to establish a secular purpose, that the judgment should be reversed, the plaintiff's motion for summary judgment granted, and an injunction issued.