**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JUDITH M. KOENICK,
<u>Plaintiff-Appellant,</u>

v.

REGINALD M. FELTON, President,
Board of Education of Montgomery
County; PAUL VANCE,
Superintendent of Schools,
Montgomery County Public
Schools,

No. 97-1935

<u>Defendants-Appellees.</u>

THE AMERICAN JEWISH CONGRESS;
NATIONAL COUNCIL ON ISLAMIC
AFFAIRS; FREEDOM FROM RELIGION
FOUNDATION; AMERICANS UNITED FOR
SEPARATION OF CHURCH AND STATE;
AMERICANS FOR RELIGIOUS LIBERTY;
AMERICAN HUMANIST ASSOCIATION;
THE AMERICAN ETHICAL UNION,
<u>Amici Curiae.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-96-3111-AW)

Argued: December 1, 1998

Decided: August 20, 1999

Before ERVIN and MOTZ, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Ervin wrote the opinion, in which Judge Motz and Senior Judge Butzner joined.

_____

## COUNSEL

**ARGUED:** Eugene Roy Fidell, FELDESMAN, TUCKER, LEIFER, FIDELL & BANK, Washington, D.C., for Appellant. Stuart Henry Newberger, CROWELL & MORING, L.L.P., Washington, D.C., for Amici Curiae. Roger Warren Titus, VENABLE, BAETJER & HOWARD, L.L.P., Rockville, Maryland, for Appellees. **ON BRIEF:** Dwight H. Sullivan, AMERICAN CIVIL LIBERTIES UNION OF MARYLAND, Baltimore, Maryland; Arthur B. Spitzer, AMERICAN CIVIL LIBERTIES UNION OF THE NATIONAL CAPITAL AREA, Washington, D.C., for Appellant. Bradley S. Albert, CROWELL & MORING, L.L.P., Washington, D.C.; Harvey Reiter, Marc D. Stern, AMERICAN JEWISH CONGRESS, Washington, D.C.; G. Arthur Robbins, MCNAMEE, HOSEA, JERNIGAN & KIM, P.A., Greenbelt, Maryland; Steven K. Green, AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE, Washington, D.C., for Amici Curiae. Kevin B. Collins, VENABLE, BAETJER & HOWARD, L.L.P., Rockville, Maryland, for Appellees.

_____

## OPINION

ERVIN, Circuit Judge:

Judith M. Koenick ("Koenick"), a former public school teacher, filed this § 1983 action against the Board of Education of Montgomery County, Maryland ("the Board") challenging the constitutionality of a Maryland statute which provides for public school holidays on the Friday before Easter through the Monday following. Koenick argued that the holiday statute's enforcement amounted to an impermissible establishment of religion in violation of the First Amendment's Establishment Clause.[1] Both parties filed summary judgment

_____

[1] Just prior to oral argument, this Court was notified that Koenick was no longer employed as a public school teacher in Montgomery County. We find, therefore, that Koenick lacks standing to pursue her equal protection claim and do not address it herein.

2

motions in district court. The court awarded summary judgment in favor of the Board and Koenick appealed. Because we agree with the district court that this statute does not violate the Establishment Clause, we affirm.

I.

Under Maryland law, public schools must create their annual school calendar in accordance with Md. Code Ann., Educ. § 7-103 (1996). Subsection (c) of § 7-103 provides for public school holidays on Thanksgiving, Christmas Eve through January 1, the Friday before Easter through the Monday after, Memorial Day, and primary and general election days.**2**

As authorized, the Board adds additional holidays to those listed in § 7-103(c), including Martin Luther King, Jr. Day, President's Day, Independence Day, Labor Day, Yom Kippur, and Rosh Hashanah. The Board decided to include Yom Kippur and Rosh Hashanah to the list of holidays because high absenteeism among both teachers and students on those days resulted in low instructional productivity and increased costs for substitute teachers. The Board also builds into the calendar an annual spring vacation by adding four more vacation days to the beginning of or at the end of the statutory four-day break over Easter weekend mandated by § 7-103(c)(1)(iii). In creating the annual calendar, the Board attempts to schedule the ten-day spring vacation so that it coincides with Passover to lower absenteeism, but that is not always possible. The official school calendar indicates that from the Friday before Easter to the Monday after Maryland public schools are closed for "Easter."

_____

**2** Section 7-103(c) provides in relevant part:

(c) <u>Holidays</u>. -- (1) The following days are public school holidays:
    (i)Thanksgiving Day and the day after;
    (ii)Christmas Eve and from then through January 1;
    (iii)The Friday before Easter and from then through the Monday after Easter;
    (iv)Memorial Day; and
    (v)Primary and general election days.

Md. Code Ann., Educ. § 7-103(c) (1996).

3

On October 3, 1996, Koenick filed this action pro se against the President and Superintendent of the Board alleging that the Board's recognition and enforcement of § 7-103(c)(1)(iii), which provides for a school holiday from the Friday before Easter to the Monday after, violated the Establishment Clause. A period of discovery followed during which Koenick retained counsel. At the close of discovery, Koenick moved to file an amended complaint and to add additional State officials as defendants. The district court allowed the filing of an amended complaint but denied her request to add defendants. Additional discovery followed the filing of the amended complaint, after which the parties filed cross-motions for summary judgment.

The district court granted summary judgment in favor of the Board, denying Koenick's claims that § 7-103(c)(1)(iii) violated the Establishment Clause. Rejecting Koenick's argument that because § 7-103(c)(1)(iii) facially prefers one religion over another, the Maryland statute should be subject to strict scrutiny under Hernandez v. Commissioner, 490 U.S. 680 (1989), the district court applied the three-part test announced in Lemon v. Kurtzman , 403 U.S. 602 (1971) ("the Lemon test"). Under the Lemon test, the district court found the statute constitutional because it had a secular purpose, its principal or primary effect was not to advance or inhibit religion, and it did not foster an excessive entanglement between church and state.

The district court acknowledged that the Supreme Court had recently suggested other tests for analyzing the constitutionality of statutes under the Establishment Clause and also that other Circuit courts had found similar statutes unconstitutional, but declined to apply the reasoning of these courts in this case. Koenick appealed the ruling.

We review the district court's grant of summary judgment de novo. See Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997). We must affirm if the case presents no genuine issues of material fact and the Board is entitled to a judgment as a matter of law. See Roe v. Doe, 28 F.3d 404, 406 (4th Cir. 1994). All reasonable inferences are to be drawn in favor of the non-movant, Koenick. See id. at 407.

II.

Koenick alleges that § 7-103(c)(1)(iii) violates the Establishment Clause of the First Amendment of the Constitution, as applied to the

4

states by the Fourteenth Amendment. The Establishment Clause provides that "Congress shall make no law respecting the establishment of religion." U.S. Const. amend. I. To evaluate Koenick's claim, therefore, we must venture into the often-dreaded and certainly murky area of Establishment Clause jurisprudence. As an initial matter, however, we must determine whether Koenick has standing to bring this suit.

A.

Just prior to oral argument, Koenick applied for retirement from the Montgomery County Public School system. She requested that her retirement pay commence on December 1, 1998, the exact date of oral argument in this case. This Court was made aware of Koenick's change in employment status in a letter from the Board's counsel wherein the Board argued that this issue mooted Koenick's appeal because she no longer had standing to file her appeal. In a response letter, Koenick's counsel conceded that, without being a teacher, Koenick lacked standing to bring her equal protection claim, but that as a taxpayer and citizen of Montgomery County and the State of Maryland she retained standing to pursue her Establishment Clause claim.

Article III, § 2 of the Constitution requires that judicial resources be spent only in the resolution of Cases or Controversies. Part of this case-or-controversy hurdle requires that the litigants have standing to sue or defend. See Arizonans for Official English v. Arizona, 520 U.S. 43, 64 (1997). To prove standing, a party must show "an invasion of a legally protected interest" that is "concrete and particularized." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). An interest shared with the public at large is not sufficient; see id. at 573-76, the litigant must allege a direct injury, such as being subjected to an unwelcome intrusion of religion. See Suhre v. Haywood County, 131 F.3d 1083, 1086-87 (4th Cir. 1997).

The seminal taxpayer standing case is Doremus v. Board of Educ., 342 U.S. 429 (1952), in which the Supreme Court explained that a taxpayer has standing to challenge a statute when he is able to show that he "has sustained or is immediately in danger of sustaining some direct injury as a result of [the challenged statute's] enforcement." Id.

5

at 434 (citations omitted). Such a direct injury has been found when the challenged statute involves the expenditure of state tax revenues. See Cammack v. Waihee, 932 F.2d 765, 769 (9th Cir. 1991). This principle has been interpreted to justify finding that a municipal tax-payer has standing in cases where the litigant's only injury is the alleged improper expenditure of municipal funds. See id. at 770 ("[W]e conclude that municipal taxpayer standing simply requires the `injury' of an allegedly improper expenditure of municipal funds. . . .").**3**

Applying this standard, Koenick has standing as a taxpayer in Montgomery County. In her complaint, Koenick alleges that she is injured by the expenditures of her tax revenues towards the paid holiday on the Friday before and the Monday after Easter for public school employees. It is undisputed that these tax revenues fund the public school system in the County and thereby fund the paid, statutory holidays for school employees such as that required by § 7-103(c)(1)(iii). Because Koenick is a taxpayer who indirectly bears the burden of funding a paid public school holiday around Easter, we find that she has standing to pursue her appeal.

B.

Having found that Koenick has standing to bring this Establishment Clause claim, we turn our attention to the merits of her appeal.

There is little confusion over the general concept behind the Establishment Clause; that it "was intended to erect a wall of separation between Church and State." Everson v. Board of Educ., 330 U.S. 1, 16 (1947) (citation omitted). There is much confusion, however, about how to apply this broad principle in specific cases. Traditionally, Establishment Clause cases have been evaluated using the Lemon test set out in Lemon.**4**  In more recent Establishment Clause

_____

**3** Although they concerned the display of religious symbols in public settings, in both Suhre v. Haywood County, 131 F.3d at 1086, and Smith v. County of Albemarle, 895 F.2d 953, 955 (4th Cir. 1990), we applied an even more permissive standard, finding that noneconomic or intangible injuries may suffice to render an Establishment Clause claim justiciable. See Suhre, 131 F.3d at 1086; Smith , 895 F.2d at 955.

**4** The Lemon test provides that:

First, the statute must have a secular legislative purpose; second,

6

cases, however, the Supreme Court has employed several different tests presented as either glosses on or replacements for the <u>Lemon</u> test;**5** therein lies the confusion as to the applicable standard.

In the instant case, Koenick argued that § 7-103(c)(1)(iii) created a facially unconstitutional denominational preference and therefore should be subjected to strict scrutiny. <u>See Hernandez</u>, 490 U.S. at 695 (ruling that "when it is claimed that a denominational preference exists, the initial inquiry is whether the law facially differentiates among religions. If no such facial preference exists, we proceed to apply the customary three-pronged Establishment Clause inquiry derived from <u>Lemon v. Kurtzman</u>.") (citations omitted).

The district court properly rejected the applicability of strict scrutiny in this case. Strict scrutiny in the Establishment Clause context is to be used to evaluate only those statutes that facially discriminate between religious denominations or between religion and non-religion. <u>See Hernandez</u>, 490 U.S. at 695. <u>See generally Barghout v. Bureau of Kosher Meat and Food Control</u>, 66 F.3d 1337, 1346-49 (4th Cir. 1995) (Luttig, J., concurring). For example, if § 7-103(c)(1)(iii) provided for a holiday only for followers of the Christian faith on the days around Easter, it would, on its face, discriminate between denominations and be subject to strict scrutiny. But it does not. Instead, the statute provides an annual holiday for all Montgomery County public school students from which all students benefit equally and thereby does not facially discriminate against any denomination. We find, therefore, that § 7-103(c)(1)(iii) does not include a

_____

> its principal or primary effect must be one that neither advances nor inhibits religion . . . ; finally, the statute must not foster an excessive government entanglement with religion.

<u>Lemon</u>, 403 U.S. at 612-13 (citation omitted).

**5** **See Hernandez v. Commissioner of Internal Revenue**, 490 U.S. 680, 695 (1989) (citing <u>Larson v. Valente</u>, 456 U.S. 228, 246 (1982), which holds that facial denominational preferences are evaluated under strict scrutiny); <u>Lynch v. Donnelly</u>, 465 U.S. 668, 688 (1984) (endorsement test); <u>Lee v. Weisman</u>, 505 U.S. 577, 592 (1992) (coercion test); <u>Rosenberger v. Rector and Visitors of the Univ. of Virginia</u>, 515 U.S. 819, 839-41 (1995) (neutrality test).

facial denominational preference and thus should not be subjected to strict scrutiny.

Finding that the instant case does not trigger strict scrutiny is only the beginning of the inquiry, however. The question remains as to what standard or test should be applied here. Heeding our conclusion in Barghout, that "until the Supreme Court overrules Lemon and provides an alternative analytical framework, this Court must rely on Lemon in evaluating the constitutionality of legislation under the Establishment Clause," 66 F.3d at 1343 n.11, the district court applied the Lemon test. We agree.

We conclude that the more recent Supreme Court cases have not, "by implication, overruled an earlier precedent," Agostini v. Felton, 521 U.S. 203, 237 (1997), and that the general principles we have relied on to evaluate Establishment Clause claims have not substantively changed since the Lemon line of cases was decided. See Agostini, 521 U.S. at 222-23 ("To be sure, the general principles we use to evaluate whether government aid violates the Establishment Clause have not changed.").**6** On that basis, we will continue to evaluate Establishment Clause cases using the Lemon test. See Granzeier, 173 F.3d at 573 (finding the endorsement test was a clarification of the second prong of the Lemon test and not a completely different analysis); Bridenbaugh, 1999 WL 517169, at *2 (interpreting Agostini as reaffirming the continued viability of the three-part Lemon test). See generally Columbia Union College v. Clarke, 159 F.3d 151, 158-59 (4th Cir. 1998) (citing Agostini for the proposition that the

_____

**6** In Agostini, the Court reaffirmed its commitment to evaluating Establishment Clause cases using the same factors considered under the Lemon test. See id. at 222-23, 232. The only explicit shift was in recognizing that the factors used "to assess whether an entanglement is excessive are similar to the factors we use to examine effect." Id. at 232 (emphasis deleted). Agostini also suggests that in some contexts the entanglement inquiry be considered an aspect of the second "effect" prong. See id. at 232-35. Like our sister circuits, however, we believe that in the present context the two inquiries are best considered separately. See Bridenbaugh v. O'Bannon, No. 98-3058, 1999 WL 517169, at *2 (7th Cir. July 21, 1999); Granzeier v. Middleton, 173 F.3d 568, 572-76 (6th Cir. 1999).

8

Supreme Court warned lower courts against finding that the Court had implicitly overruled its prior precedent).

C.

In Lemon, the Supreme Court created a three-part test for determining whether a state action violates the Establishment Clause. It required that the state action possess a secular purpose, that the action's primary effect was not the advancement of religion, and that it did not result in an excessive entanglement between church and state. See Lemon, 403 U.S. at 612-13 (citation omitted). If a state action violates even one of these three prongs, that state action is unconstitutional. See North Carolina Civil Liberties Union Legal Found. v. Constangy, 947 F.2d 1145, 1147 (4th Cir. 1991).

Three other circuits have considered the question of whether the creation of a statutory holiday around Easter violates the Establishment Clause. In Cammack, the Ninth Circuit reasoned that since Good Friday has become secularized in Hawaii, the state could declare it a holiday without violating the Establishment Clause. 932 F.2d at 769. In Bridenbaugh, the Seventh Circuit examined an Indiana statute declaring Good Friday a paid holiday for state employees. 1999 WL 517169. After finding that Indiana presented several legitimate secular purposes for the holiday, none of which had the effect of advancing religion, the court ruled the Good Friday holiday statute constitutional. See id. at *7. Finally, in Granzeier, the Sixth Circuit found that a statute closing various courts and administrative offices on Good Friday was not unconstitutional because it was enacted for the legitimate, secular purpose of giving state and county employees the day off on a convenient and low traffic day. 173 F.3d at 574-76.

1.

To be constitutional, a state action must have a"clearly secular purpose." Wallace v. Jaffree, 472 U.S. 38, 56 (1985). It need not, however, be entirely secular, see id., but if there is no evidence of a legitimate, secular purpose, then the statute must fail. See Lynch, 465 U.S. at 690. We are "reluctan[t] to attribute unconstitutional motives to the States, particularly when a plausible secular purpose for the State's program may be discerned from the face of the statute,"

9

Mueller v. Allen, 463 U.S. 388, 394-95 (1983), but "it is required that the statement of such purpose be sincere and not a sham." Edwards v. Aguillard, 482 U.S. 578, 586-87 (1987). When determining whether a statute retains a secular purpose, we look not to the purpose of the statute when enacted, but at its contemporary purpose. See McGowan v. Maryland, 366 U.S. 420, 431 (1961).

As we noted in Barghout, the "first prong[of the Lemon test] . . . is a fairly low hurdle," 66 F.3d at 1345, one we believe § 7-103 clears. The Board contends that closing schools on the Friday before and the Monday after Easter is necessary because of the high rate of absenteeism expected on these days among students and teachers. Such absences, it argues, disrupt the effectiveness of instruction and require an increased monetary outlay for the hiring of substitute teachers, wasting valuable and limited educational resources. Bolstering its argument, the Board insists that this is the same reason it closes schools on the Jewish holidays of Yom Kippur and Rosh Hashanah.

The district court was persuaded that § 7-103(c)(1)(iii) was supported by this contemporary, pragmatic, secular purpose and so are we. The Board's desire to economize scarce educational resources that are wasted when classes are held on days with a high rate of absenteeism provides a plausible secular purpose for closing school for a four day holiday around Easter. Therefore, we are persuaded that § 7-103 has a contemporary and legitimate secular purpose sufficient to satisfy the first prong of the Lemon test.

Koenick argued that although there was actual evidence supporting the Board's decision to close school for the aforementioned reasons on the two Jewish holidays, there was no comparable evidence to support closing around Easter. She suggested that a simple survey could be taken to show how many students intend to be absent on these days; without which Koenick argued, there is no evidence that such factors justify the granting of this holiday.

We find this suggestion untenable. This statutory four-day holiday around Easter has been a part of the Montgomery County Public School Calendar for 130 years. It has become part of the school community's expectations and plans, and because it is also the anchor around which the longer spring vacation is scheduled, such a survey

10

would probably yield the exact results the Board asserts, if for no other reason than that people expect to have these days off and have planned accordingly. We do not believe that the Board should be required to conduct such a survey to show that high absenteeism and decreased instructional effectiveness would result from holding classes on the days surrounding Easter weekend. We are persuaded that the four-day holiday around Easter is supported by a pragmatic, legitimate, secular purpose.[7]

2.

Having found that § 7-103(c)(1)(iii) has a secular purpose and satisfies the first prong of the Lemon test, we consider whether the statute satisfies the second prong. With this prong, we must determine if § 7-103(c)(1)(iii) has the principal or primary effect of advancing or inhibiting religion. The Government may, through speech and actions, recognize religion or a religious holiday, see Lynch, 465 U.S. at 676,

_____

[7] We note that we find nothing in the record or otherwise that indicates that Easter, the holiest day in all of Christendom, is, as the district court concluded, "a highly secularized holiday." The anecdotal evidence in the record before us concerning the secularization of Easter proves nothing. Neither Koenick's reliance on the deeply religious aspects of Easter for practicing Christians nor the Board's recitation of the many seemingly secular events surrounding the day evidence the level of secularization of the holiday. See Lynch v. Donnelly, 465 U.S. 668, 675, 685-86 (1984) (Christmas does not have to lose its religious significance for believers in order to be considered a secular holiday); County of Allegheny v. ACLU, 492 U.S. 573, 633 (1980) (O'Connor, J., concurring) ("The Easter holiday celebrated by Christians may be accompanied by certain `secular aspects' such as Easter bunnies and Easter egg hunts; but it is nevertheless a religious holiday."). What is necessary to prove Easter's secularization is evidence of the numbers of persons who observe the holiday in a purely secular way -- that is, the number of persons for whom the holiday has no religious significance but who nonetheless celebrate the occasion in some manner. See, e.g., County of Allegheny, 492 U.S. 585, 616-17 (noting that many Americans have a Christmas tree in their home or otherwise celebrate Christmas or Chanukah "without regard to [their] religious significance"). This record is devoid of such evidence. Accordingly, unlike the district court, we do not base our holding on a finding that Easter is a secular holiday.

11

but it may not overtly endorse a religion, or religion in general. See Capitol Square Review and Advisory Bd. v. Pinette , 515 U.S. 753, 764-65 (1995). A statute whose primary effect is to advance a secular purpose, rather than a religious one, is still constitutional even if it conveys an incidental benefit to those of a specific religion. See McGowan, 366 U.S. at 445; Lynch, 465 U.S. at 683 ("[N]ot every law that confers an indirect, remote, or incidental benefit upon [religion] is, for that reason alone, constitutionally invalid.") (citations omitted). Koenick argued that by establishing a four-day holiday around Easter, the statute has the effect of advancing and endorsing Christianity over other faiths. We cannot agree. Section 7-103 provides a four-day holiday for all of the Montgomery County public school children and teachers, not just followers of Christianity. By expressing no preference toward the practitioners of any one faith over any other, the four-day holiday around Easter does not endorse or advance a particular religion or religion generally. Section 7-103(c)(1)(iii) does not grant an added benefit to members of one faith that it does not grant to everyone, but rather treats all of the affected parties the same with respect to religion, and thereby does not impermissibly advance religion.

Further, by simply giving students and teachers a school holiday around Easter, § 7-103 does not mention or imply that the holiday is to be spent attending religious services in recognition of this Christian holy day. The statute merely gives people the days off to spend as they like. Although the statute makes it possible for students and teachers to attend services around Easter, it in no way promotes or advances this cause. Similarly, the Board has a policy of granting students and teachers excused absences to attend religious services in recognition of holy days in their own religions; however, by doing so there is no insinuation that such a policy advances any religion over another. See Granzeier, 173 F.3d at 575-76 (finding that when school districts with a large Jewish population close school for Jewish holy days it does not result in the impermissible establishment of the Jewish religion but rather constitutes a secular recognition of the practicalities of school attendance).

Koenick also argued that, by making the Friday before and the Monday after Easter a holiday, § 7-103 makes it easier for Christians

12

to practice their faith than for others, thereby advancing Christianity. We disagree.

The Supreme Court has stated repeatedly that a statute does not automatically violate the Establishment Clause simply because it confers an incidental benefit upon religion. See Lynch, 465 U.S. at 683. Koenick is essentially arguing that followers of the Christian faith receive an incidental benefit because § 7-103 makes their observance of Good Friday easier, and disregarding the fact that all of the other students benefit equally from the four-day holiday. As stated by the Court, that is not enough to render § 7-103 invalid on grounds that it impermissibly advances religion. Because all Montgomery County students and teachers benefit equally from the four-day holiday and because the statute does not encourage or require students to attend religious services, we do not believe that § 7-103 runs afoul of the second prong of the Lemon test.

3.

Finally, to satisfy the third prong of the Lemon test we must determine whether this statute leads to an "excessive government entanglement with religion." Lemon, 403 U.S. at 613. The Supreme Court has held that "[e]ntanglement is a question of kind and degree," Lynch, 465 U.S. at 684, and because some interaction between church and state is inevitable, the Supreme Court has reaffirmed that the "[e]ntanglement must be `excessive' before it runs afoul of the Establishment Clause." Agostini, 521 U.S. at 233.

In the past, the Supreme Court has found excessive entanglement in cases involving a state salary supplement to teachers in parochial schools. See Lemon, 403 U.S. at 615-22. In contrast, in Agostini, the Court found that a federally funded program where public school teachers provide remedial instruction to children in parochial schools on a neutral basis did not result in an excessive entanglement of government with religion. 521 U.S. at 233-35. See also Lynch, 465 U.S. at 684 (finding that because no city money was spent to maintain a challenged creche display, and no contact between the city and the church was required, there was no impermissible enduring entanglement of church and state).

13

Koenick argued that § 7-103(c)(1)(iii) implicitly involves the Board in religious matters by requiring it to participate in an ongoing, intra-faith controversy over the actual date on which Easter is to be celebrated annually. Koenick reasons that, by enforcing § 7-103(c)(1)(iii), the Board has become embroiled in a religious controversy between the Roman Catholic and Protestant Christian denominations and the various Eastern Orthodox denominations who celebrate Easter on different days; she insists that because the statute does not define Easter, every year the Board has to calculate when the holiday occurs and that determination constitutes an excessive entanglement. We disagree.

The Board showed that it consults commercially printed calendars to determine the date of Easter each year. This task certainly causes the Board to interact with religion, but it does not constitute an excessive entanglement. The Board does not have to consult with the Catholic or Protestant Churches to determine the date of Easter each year. Nor is it required to be involved in any church-related activities or provide any funding for churches or religious events. In <u>Agostini</u>, the Court ruled that even programs where public school teachers were paid with federal funds to teach disadvantaged children in parochial schools did not cause an excessive entanglement between church and state. <u>See</u> 521 U.S. at 234-35. Given the <u>Agostini</u> standard, and the lack of evidence that § 7-103(c)(1)(iii) creates any entanglement between the Board and any religion, we find that the provision of a four-day holiday around Easter does not cause the Board to become impermissibly and excessively entangled with religion.

III.

In summary, the Board's recognition and enforcement of § 7-103 does not run afoul of any of the factors set out in the <u>Lemon</u> test: It is supported by a pragmatic, legitimate, secular purpose, it does not advance or inhibit religion, and it does not result in an excessive entanglement with religion.

For the foregoing reasons, we agree that Md. Code Ann., Educ. § 7-103(c)(1)(iii) does not violate the Establishment Clause of the First Amendment. The judgment of the district court is thereby

<u>AFFIRMED</u>.

14