DISSENT
ROGERS, Circuit Judge,
dissenting.
The plaintiffs in this case lack prudential standing in their capacity as teachers to make their Establishment Clause challenge in this case, as the majority properly determines. The plaintiffs would be litigating the rights of third parties — e.g., children who would be subject to government imposition of religion — who have not sued.
The plaintiffs also lack Article III standing as taxpayers. To hold that some of the teachers nonetheless have standing as county taxpayers because the county is misusing county funds, without more, permits the wholesale disregard of third-party standing limits in the context of this case. The holding also opens up the prospect of permitting any county taxpayer to challenge any county action no matter whose interests are involved. Because counties act through their paid officers and employees, any unconstitutional action could amount to misuse of county funds. The armchair newspaper reader and county taxpayer who reads that a high school principal replaced a coach could sue because the replaced coach was of a different race or gender. The same newspaper reader might be able to sue because an across-town local policeman used unreasonable force.
No Supreme Court or Sixth Circuit precedent requires us to set such a questionable precedent, even though standing requirements for municipal taxpayers are less demanding than those for state or federal taxpayers. See Taub v. Kentucky, 842 F.2d 912, 918 (6th Cir.1988). Instead, municipal taxpayer standing law requires that the challenged county action involve an identifiable, negative effect on the county fisc. This limit is fairly derived from the holdings of Supreme Court and Sixth Circuit cases, and no other limit has been proposed to avoid the above-suggested sweeping possibilities.
It is true that the Supreme Court stated in Frothingham, v. Mellon, 262 U.S. 447, *227 486, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), that a “remedy by injunction to prevent the[] misuse [of municipal funds] is not inappropriate.” But subsequent decisions of the Supreme Court and this court — in Establishment Clause cases at that — make clear that the Frothingham language refers to misuse that results in a loss to the public fisc such that a taxpayer’s identifiable interest in that fisc is injured. In a case involving Bible-reading in the public schools, the Supreme Court quoted the Frothingham language but still required at least a diminution of public funds:
[.Frothingham ] recognized ... that “[t]he interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate.” Indeed, a number of states provide for it by statute or decisional law and such causes have been entertained in federal courts. Without disparaging the availability of the remedy by taxpayer’s action to restrain unconstitutional acts which result in direct pecuniary injury, we reiterate what the Court said of a federal statute as equally true when a state Act is assailed: “The party who invokes the power must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.”
It is true that this Court found a justiciable controversy in Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 [ (1947), a suit by a district taxpayer against a township board of education]. But Everson showed a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of. This complaint does not....
[B]ecause our own jurisdiction is cast in terms of “case or controversy,” we cannot accept as the basis for review, nor as the basis for conclusive disposition of an issue of federal law without review, any procedure which does not constitute such.
The taxpayer’s action can meet this test, but only when it is a good-faith pocketbook action. It is apparent that the grievance which it is sought to litigate here is not a direct dollars-and-cents injury but is a religious difference. If appellants established the requisite special injury necessary to a taxpayer’s case or controversy, it would not matter that their dominant inducement to action was more religious than mercenary. It is not a question of motivation but of possession of the requisite financial interest that is, or is threatened to be, injured by the unconstitutional conduct. We find no such direct and particular financial interest here. If the Act may give rise to a legal case or controversy on some behalf, the appellants cannot obtain a decision from this Court by a feigned issue of taxation.
Doremus v. Bd. of Educ., 342 U.S. 429, 433-35, 72 S.Ct. 394, 96 L.Ed. 475 (1952) (citations omitted).
Doremus cannot simply be dismissed as a state-taxpayer case. To be sure, the challenged statute in Doremus was a state statute, but that just states the nature of the constitutional claim against the local school board: enforcement of an unconstitutional state statute. The defendant was a New Jersey borough school board, and one of the two plaintiffs discussed by the Supreme Court is only described as having alleged that he was a taxpayer of the defendant borough. Id. at 433, 72 S.Ct. 394. The Court described the record in clear terms:
*228 There is no allegation that this [Bible-reading] activity is supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the school. No information is given as to what kind of taxes are paid by appellants and there is no averment that the Bible reading increases any tax they do pay or that as taxpayers they are, will, or possibly can be out of pocket because of it.
342 U.S. at 433, 72 S.Ct. 394. For standing purposes, the instant case is indistinguishable.[1] Furthermore, the above-quoted language refers on its face to municipal taxpayers, and distinguishes Everson, a case that explicitly involved “district taxpayers.” 330 U.S. at 3, 67 S.Ct. 504. Moreover, as the majority recognizes, as many as six of our sister circuits read the Doremus holding as applicable to municipal taxpayer suits. See ACLU-NJ v. Twp. of Wall, 246 F.3d 258, 262 (3d Cir.2001); Koenick v. Felton, 190 F.3d 259, 263 (4th Cir.1999); Clay v. Fort Wayne Cmty. Sch., 76 F.3d 873, 879 (7th Cir.1996); Thompson v. Cnty. of Franklin, 15 F.3d 245, 253 (2d Cir.1994); Cammack v. Waihee, 932 F.2d 765, 770 (9th Cir.1991); D.C. Common Cause v. District of Columbia, 858 F.2d 1, 4 (D.C.Cir.1988).
This court ruled similarly in a case that also clearly applies to municipal taxpayer standing. Hawley v. City of Cleveland, 773 F.2d 736, 737-38 (6th Cir.1985), was an action challenging a lease of airport space for use as a chapel. We held that users of the airport had standing because they would have to use different concourses or stairways to avoid “unwelcome religious exercises.” Id. at 740 (citation omitted). But the standing of Cleveland taxpayers depended on “whether the rental of the space for the chapel to the diocese at the agreed-upon price could harm Cleveland’s fisc,” and we remanded for a determination of that issue. Id. at 742. In doing so, we cited the very language of Frothing-ham referred to above regarding “misuse,” summarized more recent cases including Doremus, and concluded that “the Supreme Court continues to allow suits by nonfederal taxpayers to enjoin unconstitutional acts affecting public finances. ” Id. (emphasis added); see also Steele v. Indus. Dev. Bd., No. 93-5350, 1994 WL 599458, at *1 (6th Cir. Nov.l, 1994) (issuance of tax-exempt bonds to a sectarian university). Here, in contrast to the situation in Hawley where the facts were not clear, it is *229 undisputed that the elimination of the alternative school and the delegation to Kingswood did not adversely affect the public fisc. Hawley cannot be distinguished as involving a failure to collect— rather than an expenditure of — tax revenue. Compare Maj. Op. at pp. 214-15. Such a distinction is facially inconsistent with the taxpayer-standing analysis in that case, which turned on whether there was a “loss of revenue” or “harm to the public purse,” and not on some artificial distinction between spending and not collecting revenue. Because the Board in this case had an obligation under state law to provide an alternative program, the delegation was not an additional expenditure, but instead reduced the financial burden on Jefferson County and its taxpayers. There is no need to defend the public treasury because Jefferson County, and thus its taxpayers, have saved money as a result of the delegation.
In such a situation, a taxpayer asserts nothing more than a claim that the municipality must follow the law. The Supreme Court, however, has repeatedly held that “Art. Ill requirements of standing are not satisfied by ‘the abstract injury in nonobservance of the Constitution asserted by ... citizens.’ ” Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 482, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting Schlesinger v. Reservists Comm, to Stop the War, 418 U.S. 208, 223 n. 13, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).
Finally, requiring municipal taxpayers to establish at least some diminution of the public fisc is fully consistent with the distinction between municipal taxpayers and state and federal taxpayers. For federal and state taxpayers to have standing, they must show more than just government action that depletes the treasury and thus creates the possibility of future taxation. See DaimlerChrysler, 547 U.S. at 345-16, 126 S.Ct. 1854. This is because the interests of federal and state taxpayers in their respective federal and state treasuries “[are] shared with millions of others; [are] comparatively minute and indeterminable; and the effect upon future taxation ... so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventative powers of a court of equity.” Id. at 333, 126 S.Ct. 1854 (quoting Frothingham, 262 U.S. at 486-87, 43 S.Ct. 597); see also id. at 345, 126 S.Ct. 1854. Municipal taxpayers, on the other hand, have been held to possess a much more direct interest in the municipal treasury. Because municipal taxpayers are theoretically fewer in number, they have a more direct relationship with their local government such that a direct injury is presumed when the municipal fisc is depleted. Taub, 842 F.2d at 918.
A number of the cases cited by the majority as rejecting the requirement that the municipal fisc be depleted instead merely hold that a plaintiff need not show that the plaintiffs taxes must be affected. See Koenick, 190 F.3d at 263; United States v. City of New York, 972 F.2d 464, 466 (2d Cir.1992); Cammack, 932 F.2d at 770; Common Cause, 858 F.2d at 5; Donnelly v. Lynch, 691 F.2d 1029, 1031 (1st Cir.1982). These cases are nonetheless consistent with a lesser, constitutionally minimum requirement in taxpayer cases that the municipality’s funds be reduced. Without such a requirement, it is “Katie bar the door” — a county taxpayer could challenge virtually any county action without demonstrating a personal stake in the outcome of the suit.
Indeed, the District of Columbia Circuit reasoned that even though municipal taxpayers need not “demonstrate that their taxes will be reduced as a result of a favorable judgment,” they must still show *230 that “the challenged program involves a measurable appropriation of public funds.” Common Cause, 858 F.2d at 5. The D.C. Circuit cited our decision in Hawley, among other authorities. Id. In short, without at least a demonstration of a reduction of the public fisc from the challenged action, municipal taxpayers lack Article III standing.
The federal courts have jurisdiction only when plaintiffs will get something by winning beyond the satisfaction that the government is complying with the law, and (absent congressional grants of standing) only when the plaintiffs rely upon legal principles that protect their interests. These fundamental principles keep the courts from constituting themselves as supervising review boards to decide in the abstract the constitutionality of all government actions. Under these principles, plaintiffs lack standing either as employees or as municipal taxpayers. The district court therefore does not have jurisdiction to address the substantive Establishment Clause issues in this case.
I agree with the majority’s conclusion that the plaintiffs lack individual standing as teachers.[2] I join Parts II.C (procedural due process), II.D (substantive due process), and II.E (legislative immunity) of the majority opinion. I disagree with the majority’s determination that plaintiffs have standing as taxpayers, and therefore respectfully dissent.

. I recognize that the Supreme Court relied in part on Doremus in deciding that state taxpayer suits are subject to the same standing requirements as federal taxpayer suits. DaimlerChrysler v. Cuno, 547 U.S. 332, 345, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). The Court’s two brief references to Doremus accurately reflected (1) that the Doremus Court stated the policy underpinnings for federal taxpayer standing limits, and (2) the fact that the suit in Doremus challenged a state statute. Because DaimlerChrysler involved a challenge to a state statute, it made sense for the Court to find Doremus to be parallel in that respect. But DaimlerChrysler can hardly erase the fact that Doremus involved a borough taxpayer challenging actions of a borough school board, and that the Supreme Court in Doremus explicitly referred to municipal taxpayer standing.
Moreover, it would make little sense to read DaimlerChrysler, a case that limited state taxpayer standing, to have implicitly undone previously applicable limits on municipal taxpayer standing. Indeed, the Court in DaimlerChrysler rejected an argument by the plaintiff in that case, who was making a Commerce Clause challenge to a state tax credit for DaimlerChrysler, that “the award of a credit to DaimlerChrysler reduced [state distributions to local governments] and thus depleted the funds of local governments to which Respondents pay taxes.’ ” The Court rejected the argument by saying that such depletion was conjectural, and made no suggestion that such depletion was not required.

. In stating three requirements for prudential standing, the majority appears to identify being within the “zone of interests” as an independent, generally applicable requirement for prudential standing. Maj. Op. 206. The majority’s analysis does not reach the “zone of interests” test, however, and the brief discussion of the role of the "zone of interests” test is therefore not necessary to the court’s holding. For a critique of such an expansive view of the role of the “zone of interests” test, see Smith v. Jefferson Cnty. Bd.. of Sch. Comm’rs, 549 F.3d 641, 663 (6th Cir.2008) (Rogers, J., dissenting).