*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision
until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LILIYA KOMENDAT,

      Plaintiff-Appellee/Cross-Appellant,

v

ANDREW GIFFORD and ROXANNE GIFFORD,

      Defendants,

and

HOME-OWNERS INSURANCE COMPANY,

      Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
November 20, 2024
1:28 PM

No. 366183
Wayne Circuit Court
LC No. 15-013957-NI

Before: K. F. KELLY, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Defendant, Home-Owners Insurance Company, Inc., appeals of right the trial court's order awarding plaintiff, Liliya Komendat, $53,585 in no-fault attorney fees.[1] Plaintiff cross-appeals the same order. We affirm.

## I. FACTS

This is the second time this case has been before this Court. The background facts can be found in this Court's earlier opinion, *Komendat v Gifford*, 334 Mich App 138, 143-145; 964 NW2d 75 (2020):

---

[1] Although Andrew Gifford and Roxanne Gifford were the other named defendants, they had no liability with regard to plaintiff's claims involving personal protection insurance (PIP) benefits and uninsured motorist benefits, and they were dismissed as parties. As such, our use of the term "defendant" in this opinion will refer solely to Home-Owners.

This case arises from injuries plaintiff suffered as a result of a January 22, 2015 motor vehicle accident. Plaintiff was a passenger in a vehicle struck by a car driven by Andrew Gifford and owned by Roxanne Gifford. Neither Roxanne nor Andrew had no-fault insurance. For some time, defendant insurer paid various medical and transportation bills for plaintiff, totaling about $61,000, pursuant to her husband's insurance policy with defendant. On October 13, 2015, defendant refused to pay further benefits after a physician it had retained examined plaintiff and concluded that her injuries should have required only three to six months of treatment.

Plaintiff filed suit against defendant, seeking [personal protection insurance] PIP benefits and [uninsured motorist] UM coverage. . . . [D]efendant ultimately stipulated at trial that the vehicle was uninsured.

After the close of defendant's proofs at trial, plaintiff moved for a directed verdict with respect to defendant's failure to pay a prescription bill during the time that defendant was voluntarily paying plaintiff PIP benefits. The trial court granted the motion and awarded plaintiff $107.17 for the prescription bill and $38.57 in penalty interest. With respect to all other aspects of plaintiff's claims, the jury returned a verdict in favor of defendant. The jury found that the accident did not cause plaintiff to suffer from a serious impairment of an important body function, which negated plaintiff's UM claim, and it found that plaintiff had not incurred any allowable PIP expenses in excess of what defendant had already paid.

Both parties subsequently filed a series of posttrial motions. Relevant to this appeal [is] plaintiff's motion[] seeking no-fault attorney fees under MCL 500.3148(1) . . . . Regarding the request for no-fault attorney fees, plaintiff relied on the directed verdict concerning the prescription bill and sought attorney fees of $235,000 based on the total amount of time her attorneys spent representing her in the case. . . .

On May 24, 2018, the trial court entered both a final judgment memorializing the results of trial—the directed verdict for the prescription bill and the jury verdict for no cause of action with respect to the other aspects of plaintiff's claim—and a "combined order" disposing of the parties' posttrial motions. The court ruled in the combined order that plaintiff was due no-fault attorney fees on the basis of the overdue prescription bill and the lack of evidence that defendant's failure to pay the bill was reasonable. The court next considered the proper amount of the fee to be assessed and concluded that $4,688.75 was a reasonable attorney fee. . . .

Plaintiff appealed to this Court. Although this Court rejected nearly all of plaintiff's arguments, it ruled that the trial court erred in the manner it calculated the reasonable attorney fee. *Id*. at 160. This Court outlined the three-step process that courts are to take when determining a reasonable attorney fee:

In *Pirgu* [*v United Servs Auto Ass'n*, 499 Mich 269, 281; 884 NW2d 257 (2016)], the Supreme Court defined a three-step process by which a trial court is to determine a reasonable attorney fee for purposes of MCL 500.3148(1). First, the trial court must begin its analysis by determining a reasonable hourly rate customarily charged in the locality for similar services. Second, having determined the proper hourly rate, the trial court must

-2-

then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure. Third, the trial court must consider all of the [eight *Pirgu* factors] to determine whether an up or down adjustment of the baseline fee is appropriate. [*Komendat*, 334 Mich App at 152-153 (quotation marks, citations, and brackets omitted).]

Those factors include the following:

"(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent." [*Id*. at 153, quoting *Pirgu*, 499 Mich at 282.]

This Court held that the trial court improperly conflated the second and third steps of the process by considering the *Pirgu* factors before determining the baseline number of hours and the baseline fee. *Komendat*, 334 Mich App at 153. This Court continued:

[I]n determining the baseline fee in accordance with *Pirgu*, the court is to include all attorney time that was relevant to recovery of the overdue benefit, even if that time was also relevant to other aspects of the case. Attorney time that was related only to other aspects of the action, and did not bear on the benefits unreasonably withheld, should be excluded from the baseline. Any further limitation on the baseline number of hours would be difficult to square with *Pirgu*, the statute, or with the principle that the no-fault act's provisions should be liberally construed in favor of the intended beneficiaries. [*Id*. at 158.]

This Court therefore remanded to allow the trial court to calculate the reasonable number of hours and the baseline fee and after doing so, it "may adjust that figure based on the factors outlined in *Pirgu*, including 'the amount in question and the results obtained' in the case as a whole." *Id*., quoting *Pirgu*, 499 Mich at 282.

On remand, the parties stipulated that the baseline attorney fee for plaintiff's attorneys was $146,302.50 or $147,126.25.[2] Plaintiff argued that no adjustments were warranted after considering the *Pirgu* factors, while defendant argued that a substantial reduction should occur. Defendant suggested that the $4,688.75 amount the trial court previously awarded was adequate. Defendant opined that this was reasonable because although it represented about 3% of the baseline attorney fees, plaintiff only recovered less than 0.1% of what she sought at trial. Defendant noted that this Court only took exception with the trial court considering the *Pirgu* factors before it determined the baseline amount; it did not rule that the $4,688.75 amount was too small.

At the first hearing, plaintiff conceded that the third *Pirgu* factor, the amount in question and the results obtained, weighed in favor of defendant but argued that the other seven factors did not. Consequently, plaintiff sought the full $146,302.50 in attorney fees. Defendant reiterated its position that because of the vast disparity between what plaintiff sought and what plaintiff obtained in the case, the third *Pirgu* factor was key. Defendant maintained that it would be unjust and patently unreasonable to award the full $146,000 in attorney fees when plaintiff recovered a *de minimis* amount at trial.

The trial court used the $147,126.25 baseline fee. The trial court then evaluated the eight *Pirgu* factors. The trial court noted that it could not see how factor 3 would not result in a "significant downward departure" from the baseline fee. The trial court recognized that the sought-after $140,000 in attorney fees was an approximate 1000-fold increase from the actual amount recovered, which the court described as "patently unreasonable." The trial court also noted that had plaintiff succeeded on her claims at trial, plaintiff's attorneys would have been paid $80,000 (1/3 of $240,000) because of their contingency-fee agreement.

The trial court stated that it was going to "grant recovery not in the amount requested, but in an amount that I believe will fully compensate counsel and counsel's client." The trial court initially noted two options: taking 1/3 of the $80,000 (approximately $26,667) or taking 1/3 of the $147,126.25 (approximately $49,042). The court ruled as follows:

> I believe $147,126.25 is unreasonable[;] I feel that I will have to make a significant downward departure due to the overwhelming victory experienced by the Defense, and by victory I, I prefer that cases that can be settled be settled, because for a person injured it's got to be very hard to walk out of a courtroom with a very small award.

> And with a Defendant believing it had done all that it should do properly, except for $107.17, that similarly is difficult.

> So doing my best to balance the potential awards, the 1000 times [$]107.17 would be [$]107,000, 100 times would be [$]10,717. It is the ruling of the Court that I'm going to award a decreased amount from the baseline amount. I'm going to order the sum of

---

[2] Plaintiff first derived this $146,302.50 amount by taking 281.25 hours for lead counsel times his hourly rate of $370 and adding co-counsel's contribution, which was 183.25 hours times her rate of $235, yielding a total of $146,302.50. However, using those hours and rates, the actual total is $147,126.25. At the hearing, defense counsel noted that she would accept either the initial $146,302.50 or the $147,126.25 as the baseline attorney fees.

$53,585 in the attorney fees, that's a downward departure in light of the amount sought and the amount recovered.

I think it would be a miscarriage of justice and grossly unreasonable to award the $147,000 number[;] the award I'm granting with the significant deduction is taking the $107.17 and multiplying that by 500 times, which gets us to $53,585.

## II. ANALYSIS OF *PIRGU* FACTORS

Both parties on appeal challenge the trial court's decision to award plaintiff $53,585 in attorney fees. Plaintiff claims that the trial court should not have deviated much, if at all, from the baseline $147,126.25 attorney fee amount, and defendant argues that the court should have deviated to a much lower amount. But neither party has demonstrated any error requiring reversal.

We review the amount a trial court awards for attorney fees for an abuse of discretion. *Peterson v Fertel*, 283 Mich App 232, 239; 770 NW2d 47 (2009). A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Under MCL 500.3148(1), as enacted by 1972 PA 294,[3]

[a]n attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

This Court in *Komendat*, 334 Mich App at 152-153, summarized the process for determining a reasonable attorney fee under that statute:

First, the trial court must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services. Second, having determined the proper hourly rate, the trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure. Third, the trial court must consider all of the remaining factors set forth in [*Wood v DAIIE*, 413 Mich 573; 321 NW2d 653 (1982)] and in MRPC 1.5(a) to determine whether an up or down adjustment of the baseline fee is appropriate. [Quotation marks, citations, and brackets omitted.]

After this Court's remand in *Komendat*, the parties stipulated to the first step, with plaintiff's lead counsel having a reasonable hourly rate of $370 and co-counsel having a reasonable hourly rate of $235. The parties also effectively stipulated to the second step, culminating with an agreed-upon baseline attorney fee of $147,126.25.

---

[3] This was the provision in effect at the time of plaintiff's initial request for no-fault attorney fees. See *Komendat*, 334 Mich App at 152 n 6.

Plaintiff suggests that the use of the eight *Pirgu* factors is discretionary or permissive. We disagree. There is no discretion in whether to analyze the factors—we stated that the trial court "must" consider all of the factors. *Id.*; see also *Pirgu*, 499 Mich at 281. "Must" denotes mandatory action. *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 416; 836 NW2d 498 (2013). What is discretionary is how a court deviates, if at all, from the baseline fee after considering those factors. *Komendat*, 334 Mich App at 152-153; see also *Pirgu*, 499 Mich at 281.

Although the trial court did not find that all of the factors were pertinent, it nonetheless addressed each one. Addressing the first factor, although the trial court had no issue with the standing and experience of plaintiff's counsel, it did not find that this fact was a reason to adjust the baseline fee. For the second factor, the trial court noted that there did not appear to be any defense to the unpaid prescription bill and found that this factor did not favor an adjustment either. Skipping the third factor, the trial court addressed the fourth one and opined that the expenses incurred were largely irrelevant because each side incurred significant expenses. The trial court did not see how factors (5), (6), or (7) warranted deviating from the baseline fee. For factor (8), the trial court noted that because it was a contingent fee agreement and assuming plaintiff recovered approximately $150, it could be argued that an award of $50 was appropriate. But the trial court rejected that proposition because plaintiff's counsel had expertise in maximizing plaintiff's recovery.

The trial court then addressed factor (3), "the amount in question and the results obtained." The trial court first noted that the baseline attorney fee of approximately $140,000 was about 1,000 times the amount of the prescription bill recovery, which it found was patently unreasonable. Thus, the trial court intended to make a downward departure from the baseline amount. The trial court then waxed about various ways it could determine the ultimate fee. It initially noted that because plaintiff's counsel was working on a 1/3 contingency-fee agreement with plaintiff, and because plaintiff was seeking $240,000 at trial, plaintiff's counsel necessarily was seeking $80,000 in attorney fees.[4] The trial court explained:

> My analysis causes me to look at the $80,000 fee, that would be a 1/3 contingent fee, but that's if Plaintiff had hit for the amount sought. You take the $80,000 fee and divide that by 1/3, 1/3 it would be $26,667, 'cause I'll round up. A 1/3 of a 1/3 might make sense in this context, but perhaps that number is too low.

> Another way to look at it is the baseline fee amount of [$]147,126.25. If we divide that into 1/3, that yields the sum $49,042.08. In my view a number is what is needed and the amount currently sought is 1000 times the amount recovered. So my ruling is as follows.

> I believe $147,126.25 is unreasonable[;] I feel that I will have to make a significant downward departure due to the overwhelming victory experienced by the Defense, and by victory, I, I prefer that cases that can be settled be settled, because for a person injured it's got to be very hard to walk out of a courtroom with a very small award.

---

[4] Although the trial court did not explicitly tie this observation to factor (8), the observation is permissible under that factor.

And with a Defendant believing it had done all that it should do properly, except for $107.17, that similarly is difficult.

So doing my best to balance the potential awards, the 1000 times [$]107.17 would be [$]107,000, 100 times would be [$]10,717. It is the ruling of the Court that I'm going to award a decreased amount from the baseline amount. I'm going to order the sum of $53,585 in the attorney fees, that's a downward departure in light of the amount sought and the amount recovered.

I think it would be a miscarriage of justice and grossly unreasonable to award the $147,000 number, the award I'm granting with the significant deduction is taking the $107.17 and multiplying that by 500 times, which gets us to $53,585.

Addressing defendant's arguments first, defendant maintains that the trial court abused its discretion because the $53,585 awarded fee is still unreasonable in light of the meager amount recovered. We disagree. Importantly, while the discrepancy between the awarded fee and the amount recovered at trial is very significant—and if looked on in a vacuum might make one conclude that it is unreasonable—it is important to recognize that defendant agreed that plaintiff's counsel incurred approximately $147,000 in attorney fees associated with the pursuit of that unpaid prescription bill. Furthermore, attorney fees under MCL 500.3148(1) are a penalty to the insurer for unreasonably delaying payment of a due benefit. *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 574 n 25; 702 NW2d 539 (2005). In this light, while the $53,585 represents a 500-fold increase from the amount plaintiff recovered at trial, it does not strike us as falling outside the range of principled and reasonable outcomes under the circumstances.

Defendant's reliance on federal caselaw is misplaced. At the outset, this case involves the proper interpretation and application of Michigan law, so these opinions from federal courts are not binding. See *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004); *Hill v City of Warren*, 276 Mich App 299, 314; 740 NW2d 706 (2007). Furthermore, the federal cases defendant cites all pertain to a party recovering attorney fees under 42 USC 1988(b), which provides:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

Although both this provision and MCL 500.3148(1) address the award of reasonable attorney fees, that is where the similarities end. Under MCL 500.3148(1), the award of reasonable attorney fees is mandatory, while under 42 USC 1988(b), it is discretionary. Compare MCL 500.3148(1), as enacted by 1972 PA 294 (stating that an attorney "is entitled" to attorney fees and that the fee "shall be a charge against the insurer in addition to the benefits recovered") with 42 USC 1988(b) (stating that the court "in its discretion, may" award attorney fees); see also *Farrar v Hobby*, 506 US 103, 119; 113 S Ct 566; 121 L Ed 2d 494 (1992) (O'Connor, J., concurring) (noting that 42 USC 1988 allows a court to award attorney fees in its discretion).

In *Granzeier v Middleton*, 173 F3d 568, 577-578 (CA 6, 1999), a case cited by defendant, the court awarded attorney fees equal to the baseline attorney fee amount. Although the plaintiff's counsel had sought nearly $26,000 in attorney fees, the lower court reduced the hourly rates and reduced the hours worked, resulting in a fee of $4,617.95. *Id*. There was no further analysis akin to the *Pirgu* analysis. Thus, *Granzeier* does not support defendant's position.

In *Farrar*, 506 US at 111-112 (majority opinion), the Supreme Court held that the plaintiff, who had sought $17 million from six defendants and only received a single dollar from one defendant, was not entitled to any attorney fees. Although the Court held that the plaintiff technically was a "prevailing party," it also noted that "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." *Id*. at 115. The Court stated that under this statutory scheme, " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Id*. at 114 (citation omitted); see also *Pouillon v Little*, 326 F3d 713, 716 (CA 6, 2003). This premise is not really in dispute. Indeed, the trial court in the present case relied almost exclusively on the meager recovery plaintiff won while awarding approximately 1/3 of the baseline attorney fees. Critically, once the trial court determined in the earlier proceeding that defendant unreasonably denied the prescription bill payment, the trial court had no discretion to award no fees. That is distinguishable from all the federal cases addressing 42 USC 1988(b).

What the issue comes down to is whether plaintiff is entitled to an award of attorney fees in the amount of $53,585, when her counsel had "spent" $147,000 in labor on the case. "There is no precise rule or formula for making these determinations." *Hensley v Eckerhart*, 461 US 424, 436; 103 S Ct 1933; 76 L Ed 2d 40 (1983). While the raw amount of $53,585 is undoubtedly high compared to the nominal amount plaintiff recovered, for the reasons explained earlier, we cannot categorize the trial court's deduction as devoid of reason or principle. Accordingly, defendant has failed to show that the trial court's decision amounts to an abuse of discretion.

Plaintiff makes several arguments, of which none has merit. Plaintiff first asserts that the law of the case[5] precludes the trial court from awarding the same amount the trial court initially awarded, which was vacated by *Komendat*. This argument is in response to defendant's argument and does not reflect the reality of the situation: the trial court did not award the same amount as before; it awarded $53,585. Thus, plaintiff's argument is mistaken. Moreover, this Court did not rule that the prior award of $4,844 was impermissible; it simply ruled that the trial court failed to adhere to the three-step process of *Pirgu*. The trial court erroneously determined—with no evidentiary support—that plaintiff's counsel reasonably would have worked 15.5 hours related to the prescription bill. *Komendat*, 334 Mich App at 153. This was counter to the mandates of *Pirgu*. Nothing in our *Komendat* opinion precluded the trial court on remand from ultimately arriving at the same amount, as long as it followed the steps as outlined in *Pirgu*.

Plaintiff also argues that taking 1/3 of the baseline fee or using a multiple of 500 on the amount recovered is impermissible. We disagree. It is undisputed that a court possesses the power to make

---

[5] The law-of-the-case doctrine generally provides that a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case. *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000). Consequently, "an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Id*. at 260.

adjustments to the baseline fee after considering the *Pirgu* factors. See *Pirgu*, 499 Mich at 281 (stating that the *Pirgu* factors are used "to determine whether an up or down adjustment is appropriate"). While a court could simply add or subtract a fixed amount to or from the baseline fee, there is nothing to prohibit a court from utilizing percents, ratios, fractions, or multiples. Plaintiff has not cited any authority supporting that position. While it could be argued that using a multiple or factor on the amount recovered instead of on the baseline attorney fee, nothing in the caselaw appears to prohibit taking that step. Furthermore, the trial court did recognize that its multiplying of the $107.17 amount recovered by 500 was nearly the same as taking 1/3 of the $147,126.25 baseline fee, so the court for practical purposes was gauging its award from how it compared to the baseline fee.

Lastly, plaintiff argues that only "small" adjustments are allowed under the *Pirgu* framework. In support of her position, plaintiff claims that the Oxford English Dictionary defines "adjustment" as being "a small alteration or movement made to achieve a desired fit, appearance, or result." However, when consulting various Oxford dictionaries, plaintiff's proffered definition is not found. In a version of the Oxford Dictionary from 1989, the following pertinent definitions for "adjustment" exist: "[t]he process of adjusting" and "[t]he state or condition of being adjusted, or put in proper order." *Oxford English Dictionary* (2d ed). More recently, "adjustment" is defined, in pertinent part as "[t]he action or process of adjusting something (in various senses). Also: an instance of this; an alteration, a modification." Oxford English Dictionary <https://www.oed.com/search/dictionary/?scope=Entries&q=adjustment> (accessed November 6, 2024). Another recent dictionary similarly provides broad definitions for "adjustment," such as "the act or process of adjusting" and "a correction or modification to reflect actual conditions." *Merriam-Webster's Collegiate Dictionary* (11th ed).

A look at the definition of "adjust" fares no better for plaintiff. "Adjust" is defined, in pertinent part, as "[t]o arrange, harmonized, or reconcile (different or contradictory things); to settle, to resolve (esp. a difficulty or problem)." Oxford English Dictionary <https://www.oed.com/search/advanced/Meanings?textTermText0=adjust&textTermOpt0=WordPhrase &dateOfUseFirstUse=false&page=1&sortOption=AZ> (accessed November 6, 2024); see also *Oxford English Dictionary* (2d ed) (defining "adjust" as "[t]o arrange, compose, settle, harmonize (things that are or may be contradictory, differences, discrepancies, accounts)"). *Random House Webster's College Dictionary* (1995) defines "adjust" as "to change (something) so that it fits, corresponds, or conforms; adapt, accommodate: *to adjust expenses to income*" or "to settle or bring to a satisfactory state, so that parties are agreed in the result: *to adjust our differences*." And *Merriam-Webster's Collegiate Dictionary* (11th ed) defines that term to be "to bring to a more satisfactory state: (1) : SETTLE, RESOLVE (2) : RECTIFY."

In short, the dictionary definitions do not support plaintiff's position that any adjustments to the baseline fee must be small. Moreover, accepting that one proper use of "adjustment" is to indicate small alterations, clearly from these other identifiable definitions, the word "adjust" can be used in a not-so-limited nature. Further, nothing in *Pirgu*, or *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008)—the authority *Pirgu* heavily relied on—indicates that our Supreme Court meant that any adjustments were to be viewed as being "small." Instead, a court is required to review the factors and simply adjust "up or down" as it deems fit. *Pirgu*, 499 Mich at 275-276, 281; *Smith*, 481 Mich at 522, 531, 537 (opinion by TAYLOR, C.J.). Our Supreme Court did not express or imply that there were any extra limitations on the exercise of that discretion while determining a reasonable fee.

Therefore, neither party has demonstrated that the trial court abused its discretion by awarding no-fault attorney fees in the amount of $53,585.

### III. "CONTINUING" ATTORNEY FEES

Plaintiff also argues that she should be entitled to "continuing" attorney fees because the underlying prescription bill remains unpaid. This issue is not properly before this Court. Because plaintiff never raised the issue in the trial court, it is unpreserved. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). And unpreserved issues in civil cases are waived. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 4-5.

Regardless, this Court is an error-correcting court. See *Apex Laboratories Int'l Inc v Detroit (On Remand)*, 331 Mich App 1, 10; 951 NW2d 45 (2020). Plaintiff has not identified any error in the lower-court proceedings for this Court to correct. Further, from the way plaintiff presents the issue, the only "error" we glean that may exist is that the baseline attorney fee is too low because it should have included other hours. But plaintiff presented that baseline attorney fee to the trial court. She cannot now complain about those very numbers on appeal. See *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 455 n 1; 733 NW2d 766 (2006) (" 'A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court.' ") (citation omitted).

### IV. CONCLUSION

The trial court did not abuse its discretion by awarding plaintiff $53,585 in attorney fees. We affirm.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan

-10-